J. A. MATHENY v. CENTRAL MOTOR LINES, INC., AND JOHN D. MONTGOMERY.

(Filed 7 June, 1951.)

1. **Evidence § 17—**

While a party may not impeach the credibility of his own witness, he is not precluded from showing the facts to be otherwise than as testified to by the witness.

2. **Automobiles § 8i—**

A driver along a servient highway who comes to a complete stop before its intersection with a dominant highway is under duty to exercise reasonable care to ascertain that he can enter upon the intersection with reasonable assurance of safety to himself and others, and it is negligence for him to enter upon the intersection in the path of a vehicle approaching along the dominant highway unless such other vehicle is a sufficient distance from the intersection to afford the driver upon the servient highway reasonable ground to believe that he can cross the intersection in safety. G.S. 20-158. G.S. 20-155 applies to moving vehicles approaching an intersection at approximately the same time.

3. **Automobiles § 18h (3)—**

Plaintiff's own evidence tended to show that he was driving along a servient highway and stopped his car before entering upon an intersection with a dominant highway at a point from which he had a clear and unobstructed view of traffic upon the dominant highway, and that he moved out into the intersection in front of a large truck approaching along the dominant highway at a rate of thirty miles per hour and was struck by the truck before his car had traveled more than nine or ten feet. *Held:* Plaintiff's evidence discloses as a matter of law contributory negligence constituting a proximate cause of the accident.

4. **Negligence § 19c—**

While the question of proximate cause is ordinarily for the jury, where it appears from plaintiff's own evidence that he was guilty of negligence

constituting a proximate cause of the injury and this is the sole reasonable inference deducible therefrom, nonsuit on the ground of contributory negligence is proper.

**5. Negligence § 10: Automobiles § 18e—**

Evidence tending to show that defendant, after having come to a complete stop, drove his car into an intersection with a dominant highway in the path of a truck approaching the intersection along the dominant highway at a speed of thirty miles per hour, and was struck by the truck after he had traveled some nine or ten feet, *is held* insufficient to support an issue of last clear chance, since this doctrine is not applicable unless plaintiff discovers or should have discovered defendant's peril in time to have avoided the injury.

APPEAL by plaintiff from *Crisp, Special Judge,* December Term, 1950, of MECKLENBURG. Affirmed.

This was an action to recover damages for injury to person and property resulting from collision between plaintiff's automobile and defendants' motor truck. This was alleged to have been caused by the negligence of the defendants. At the close of plaintiff's evidence defendants' motion for judgment of nonsuit was allowed, and from judgment dismissing the action plaintiff appealed.

*Covington & Lobdell, J. Laurence Jones, and Guy T. Carswell for plaintiff, appellant.*

*Tillett, Campbell, Craighill & Rendleman for defendants, appellees.*

DEVIN, J. The collision between plaintiff's automobile and the truck of the defendant Motor Lines, Inc., driven at the time by defendant Montgomery, which forms the basis of plaintiff's action, occurred 16 November, 1949, at the intersection of State Highway #27 and State Highway #151. The general direction of Highway #27 is east and west, and that of Highway #151 north and south. Both are much traveled highways with paved surface 20 feet wide, Highway #27 carrying more traffic than the other. These highways intersect at right angles in a rural area, with gasoline filling stations near each corner. At the northwest corner of the intersection is a vacant lot and immediately west of it the motor service station of Beatty Motor Company. As the driver of a motor vehicle approaches the intersection from the north going south there are highway signs requiring him to stop before entering, and as one approaches from the east along Highway #27 there is a sign "slow."

The collision occurred about 2:45 p.m. on a clear day. There was no obstruction to the view. Highway #27 along which the truck was moving was straight and level for some distance on each side of the intersection. The plaintiff, with his wife beside him, was driving south on Highway

#151 in a Mercury automobile, and defendant Montgomery was proceeding west on Highway #27 driving defendant Motor Lines' truck with a cargo of merchandise. The truck was a tandem tractor-trailer type, 32 to 36 feet long and some 10 feet high.

The plaintiff approaching the intersection brought his automobile to a complete stop 2 or 3 feet from the edge of the paved surface of Highway #27, and so remained for an appreciable length of time. The plaintiff's witness Hipp first expressed opinion the time was as long as 30 seconds but later said he couldn't say how many seconds as the "whole thing happened mighty fast." Defendants' truck coming from the east was visible for a distance of 300 yards, or according to another witness 400 feet, from the intersection and was being driven at the rate of 30 miles per hour according to the testimony of plaintiff's witness who was driving a smaller truck immediately behind the defendants' truck.

The plaintiff's automobile moved from its stopped position and started across the intersection, and when its front had reached a point 2 feet from the center line of Highway #27, having traveled only 9 or 10 feet, it was struck on its left front fender by the defendants' truck. Apparently the truck driver at the moment had attempted to turn the tractor to the left so that the right front of the tractor struck the left front fender of the automobile, but the trailer to which the tractor was attached was unable to change direction so quickly and its landing gear, located about the middle of the trailer, struck the automobile on the side and knocked it off the highway and across the northwest corner of the intersection into a ditch, injuring plaintiff and his wife. The tractor-trailer of the defendants, at the time of the impact, was turned slightly to the left, and then turned diagonally across the highway to the right, to the north, and after striking a gasoline tank and signpost came to rest in front of Beatty Motor Company's place, a distance of 183 feet from the point of intersection of the highways. The highway patrolman observed marks left by the wheels of the truck extending back 200 feet and showing those marks began at a point 20 feet east of the intersection and in the north lane of Highway #27. These marks were not in a straight line, but bore first to the left across the center of the highway and then to the right to where the truck had stopped. For the last 100 feet of the progress of the truck after the collision the tire marks could hardly be seen. The debris indicating the point of collision was 2 feet west and 2 feet north of center of intersection.

Both plaintiff and his wife testified they suffered concussion so severe as to produce in each retrograde amnesia, and neither had any recollection of the circumstances of the collision and was unable to testify about it. The only eyewitness offered by the plaintiff as to the facts of the collision was H. M. Hipp whose deposition taken by the defendants was

offered by the plaintiff. The motion to nonsuit having been allowed at the close of plaintiff's evidence, the defendants offered no evidence.

On this occasion Hipp was driving a Ford delivery truck traveling west behind the Motor Lines truck on Highway #27. He had endeavored to pass the slower moving truck, and after they passed the crest of a slight elevation 300 yards from the intersection he pulled out to his left to pass, but seeing the intersection ahead pulled back behind the defendants' truck. At that time when the truck was 150 to 200 feet away he could see the plaintiff's automobile already stopped just north of the intersection. We quote from his testimony as follows: "The fellow in the Mercury pulled up there and stopped. The fellow in front of me, in the Central Motor Lines truck, had slowed down and touched his brakes, because his red stop-lights blinked in my face, and at that time the Mercury pulled out directly in front of the truck. The truck swerved to the left to avoid hitting the Mercury and the point of impact was right at the center of the road. The right front of the tractor hit the left front fender of the Mercury. The trailer did not move over, as there wasn't enough distance for the trailer to follow the tractor; and all that moved out of the center of the road was the tractor, at which point he lost control of his tractor. The driver lost control of the tractor, because he hit his brakes and the trailer had started to jack-knife after the impact of the tractor on the automobile. And, so far as I could see, he had no more brakes and he proceeded to hit the gas pumps in front of Beatty Motor Company. I have an opinion satisfactory to myself as to how fast the Central Motor Lines truck was going at the time it entered the intersection. My opinion is approximately 30 miles an hour."

Hipp also testified the front of the tractor was 35 or 40 feet away from the automobile when the automobile started from its stopped position into the intersection. On cross-examination this witness was asked how far the truck was from the intersection when he first saw the automobile stopped at the intersection, and he replied: "He was far enough away to have sufficient time to stop if the Mercury had went ahead and pulled out at that time, but the Mercury didn't pull out then. He waited until he got up close to him."

The plaintiff, who was 76 years of age at the time of the collision, admitted he had had cataract removed from his left eye and wore thick bi-focal lens on that side, that through the bottom part of this lens he could not see anything at a distance, and that due to cataract unremoved he could see very little out of his right eye. He said his wife wore glasses but "She does not have as much trouble in seeing as I do." However, he testified he had automobile driver's license issued by the State of Virginia where he had spent the summer.

The plaintiff having offered the deposition of Hipp, could not impeach his credibility (*Lynch v. Veneer Co.*, 169 N.C. 169, 85 S.E. 289; *S. v. Freeman*, 213 N.C. 378, 196 S.E. 308), but would not thereby be precluded from showing other facts in some instances inconsistent with those deposed by this witness. And plaintiff's position is that the evidence as to the force of the collision and the physical facts disclosed by the testimony of the highway patrolman, taken in connection with that portion of Hipp's evidence which was most favorable to the plaintiff, were sufficient to carry the case to the jury on the issue of defendants' negligence; and that the evidence and inferences drawn therefrom relied on by defendants to show contributory negligence at most raise merely a question of fact for the jury as to the proximate cause of the injury complained of. Plaintiff contends there was evidence tending to show that defendants' driver failed materially to reduce speed in approaching and traversing an intersection of highways (G.S. 20-141 (c)), and that having seen plaintiff's automobile stopped at the edge of the highway he failed to exercise due care to avoid the collision (*Williams v. Henderson*, 230 N.C. 707, 55 S.E. 2d 462), and argues that plaintiff having entered the intersection had right of way.

Defendants, however, insist that a contrary view is compelled by the uncontradicted evidence offered by the plaintiff. They point out that the truck was proceeding at 30 miles per hour over a level concrete road, 20 feet wide, with no other traffic in view save plaintiff's automobile which had come to a complete stop; that the speed of the truck, not excessive, was not materially slackened as the driver observed that plaintiff's automobile had stopped apparently to await the passing of defendants' truck; that defendants' truck was proceeding over a dominant highway (G.S. 20-158), whereas the highway on which plaintiff was traveling #151 was made subservient by stop signs and red lights restricting entry into the highway #27 on which defendants' truck was moving; that defendants' driver had the right to assume that plaintiff would not start into the highway without seeing that such movement could be made in safety. G.S. 20-154; *Reeves v. Staley*, 220 N.C. 573, 18 S.E. 2d 239.

Furthermore, defendants contend that contributory negligence on the part of the plaintiff was conclusively shown by the evidence, and that judgment of nonsuit was properly entered on this ground. Defendants argue that no other reasonable conclusion can be reached from consideration of plaintiff's evidence but that the collision was caused by his own negligence. In support of this view defendants call attention to evidence tending to show that plaintiff having stopped in obedience to the highway sign was required before moving into the intersection to look for oncoming vehicles and to ascertain if he could do so with reasonable assurance of safety; that if he had looked and been able to see he would have ob-

served this large truck approaching when it was 150 to 200 feet away, and been able to judge of its speed; that according to Hipp's statement if plaintiff had at that instant started across, the truck would have had time to stop, that plaintiff did not do so, but waited until the truck "got up close to him." This witness testified the automobile started from its stopped position when the tractor was 35 or 40 feet away. While later in his examination he estimated the distance as 50 to 75 feet, the defendants insist that disregarding those estimates of distance, it conclusively appears from the testimony and the physical facts that the plaintiff's automobile had traveled not more than 9 or 10 feet from its stopped position when it was struck, showing the automobile had started out into the highway when the truck was almost upon it.

The evidence discloses that the plaintiff driving south on Highway #151, in obedience to the stop signs, had come to a complete stop two feet from the edge of the intersecting Highway #27. The purpose of highway stop signs is to enable the driver of a motor vehicle to have opportunity to observe the traffic conditions on the highways and to determine when in the exercise of due care he might enter upon the intersecting highway with reasonable assurance of safety to himself and others. *S. v. Satterfield,* 198 N.C. 682, 153 S.E. 155. And the statute G.S. 20-154 also requires that before starting from a stopped position and moving into the line of traffic the driver shall first see that such movement can be made in safety. Under the circumstances here disclosed the duty devolved upon the plaintiff to exercise reasonable care to ascertain that his entry into the traffic lanes of #27 could be made with safety to himself and others before undertaking it. *Cooley v. Baker,* 231 N.C. 533, 58 S.E. 2d 115. In *Meyer v. Hartford Bros. Gravel Co.,* 144 Neb. 808, the rule was well stated as follows: "A driver of a motor vehicle about to enter a highway protected by stop signs must stop as directed, look in both directions and permit all vehicles to pass which are at such a distance and traveling at such a speed that it would be imprudent for him to proceed into the intersection." Under such circumstances it was said in *Bergendahl v. Rabeler,* 133 Neb. 699, "The duty of the driver of a vehicle . . . to look for vehicles approaching on the highway implies the duty to see what was in plain sight."

Since at the intersection described in the case at bar the driver of an automobile approaching the intersection from the north was required (G.S. 20-158) to bring his automobile to a complete stop, the right of way, or rather the right to move forward into this intersection, would depend upon the presence and movement of vehicles on the highway which he intended to cross. The rule as to right of way prescribed by G.S. 20-155 applies to moving vehicles approaching an intersection at approximately the same time. *Kennedy v. Smith,* 226 N.C. 514, 39 S.E.

2d 380. Where the driver has already brought his automobile to a complete stop, thereafter the duty would devolve upon him to exercise due care to observe approaching vehicles and to govern his conduct accordingly. One who is required to stop before entering a highway should not proceed, with oncoming vehicles in view, until in the exercise of due care he can determine that he can do so with reasonable assurance of safety. *Otey v. Blessing,* 170 Va. 542. Generally when the driver of an automobile is required to stop at an intersection he must yield the right of way to an automobile approaching on the intersecting highway (Blashfield, Secs. 997, 998, 1001; *Shoniker v. English,* 254 Mich. 76), and unless the approaching automobile is far enough away to afford reasonable ground for the belief that he can cross in safety he must delay his progress until the other vehicle has passed. *Cooley v. Baker,* 231 N.C. 533, 58 S.E. 2d 115; *S. v. Hill, ante,* 61, 62 S.E. 2d 532. Here the testimony of the witness Hipp as well as the physical evidence on the ground, shows that the plaintiff after coming to a full stop undertook to drive his automobile into the intersecting highway and was struck almost instantly by defendants' truck. From this the inference seems irresistible that at the moment plaintiff started forward the truck was so near that in the exercise of reasonable prudence he should have seen he could not cross in safety. While the plaintiff had the right to assume the driver of an approaching vehicle would exercise due care (*Holderfield v. Trucking Co.,* 232 N.C. 623, 61 S.E. 2d 904; *Reeves v. Staley,* 220 N.C. 573, 18 S.E. 2d 239), that did not relieve the plaintiff of the duty of observing the approach of the truck and its speed, of which he had an unobstructed view, if he had looked.

In *S. v. Hill, ante,* 61, 62 S.E. 2d 532, the driver of an automobile who entered into and undertook to cross an intersecting street when another automobile was approaching at 20 miles per hour but 125 or 150 feet away, was absolved from the imputation of criminal negligence. In *Cab Co. v. Sanders,* 223 N.C. 626, 27 S.E. 2d 631, it was held that where plaintiff's automobile entered an intersection when another automobile was approaching from his right but far enough away (in this case 125 feet) to justify his belief in the exercise of due care that he could cross in safety he would not necessarily be guilty of contributory negligence. And the same result was reached in *Crone v. Fisher,* 223 N.C. 635, 27 S.E. 2d 642, when plaintiff entered the intersection with another automobile approaching 125 feet away. However, in *Hittle v. Jones,* 217 Iowa 598, it was held that the driver of an automobile on a subservient road driving into the intersection at speed of 10 miles per hour when he saw another automobile approaching at a distance of 80 or 90 feet was guilty of negligence as a matter of law.

The right of one starting from a stopped position to undertake to cross an intersection would depend largely upon the distance from the intersection of approaching vehicles and their speed, and unless under the circumstances he could reasonably apprehend no danger of collision from an approaching vehicle it would be his duty to delay his progress until the vehicle had passed. *S. v. Hill, ante,* 61, 62 S.E. 2d 532; 2 Blashfield, Sec. 1001, *et seq.*

The facts here are similar to those in *Horn v. Draube,* 132 So. 531. There the plaintiff, after stopping his automobile in a position of safety, saw an approaching truck, and then ventured to cross in front of it. It was held plaintiff's negligence was the sole cause of the injury. Another case similar to this is *Otey v. Blessing,* 170 Va. 542, from which we quote: "There can be no doubt about Otey's negligence. The stop sign at the crossing and the mandate of the statute give to the high road the right of way. Yet after having stopped and when this fast approaching car was but eighteen or twenty steps away in plain view, he attempted to pass in front of it in a car sixteen feet long. It was almost a suicidal movement. To stop and not to look is inexcusable and inexplainable."

Giving to the plaintiff's evidence the benefit of the rule of favorable consideration, *Howard v. Bingham,* 231 N.C. 420, 57 S.E. 2d 401; *Brafford v. Cook,* 232 N.C. 699, 62 S.E. 2d 327, the fact seems to have been established here by the uncontradicted evidence introduced by the plaintiff that he started his automobile from a stopped position at the edge of the pavement of the intersecting highway, from which point he had a clear and unobstructed view of oncoming traffic, and moved out into the highway in front of a large truck approaching in that lane of traffic at the rate of 30 miles per hour when the truck was so near that before his automobile had traveled more than 9 or 10 feet it was struck on its left front side by the oncoming truck. The conclusion seems inescapable that plaintiff's conduct in driving from a position of safety out in front of an approaching motor truck under the circumstances here disclosed indicated that before doing so he failed to look and to see what was in clear view and to exercise ordinary care for his own safety, and that this negligence on his part was a proximate contributing cause of his injury. *Godwin v. R. R.,* 220 N.C. 281, 17 S.E. 2d 137; *Wall v. Bain,* 222 N.C. 375 (379), 23 S.E. 2d 330; *Cox v. Lee,* 230 N.C. 155, 52 S.E. 2d 355; *Carruthers v. R. R.,* 232 N.C. 183, 59 S.E. 2d 782.

The fact that the marks on the pavement made by the tires of the truck as testified by the highway patrolman, began 20 feet east of the intersection would seem to indicate application of brakes at that point presumably at the time the driver of the truck saw the automobile head into the highway. Whether or not the speed of the truck was appreciably lessened does not appear, but the over-all picture of the collision is one

of negligence on the part of the plaintiff in attempting to cross the highway immediately in front of the approaching truck with its bulk and speed plainly visible. *Butner v. Spease*, 217 N.C. 82, 6 S.E. 2d 808.

Ordinarily what is the proximate cause of an injury is a question for the jury. *Conley v. Pearce-Young-Angel Co.*, 224 N.C. 211, 29 S.E. 2d 740; *Nichols v. Goldston*, 228 N.C. 514, 46 S.E. 2d 320. But where the essential facts are not in dispute and only one reasonable inference can be drawn therefrom nonsuit on the ground of the contributory negligence of the plaintiff should be allowed. *Brown v. Bus Lines*, 230 N.C. 493, 53 S.E. 2d 539; *Bus Co. v. Products Co.*, 229 N.C. 352, 49 S.E. 2d 623; *Beck v. Hooks*, 218 N.C. 105, 10 S.E. 2d 608; *Marshall v. R. R., ante,* 38, 62 S.E. 2d 489. "It is the prevailing and permissible rule of practice to enter judgment of nonsuit in a negligence case, when it appears from the evidence offered on behalf of the plaintiff that his own negligence was the proximate cause of the injury, or one of them." *Godwin v. R. R., supra.*

There was no sufficient evidence to carry the case to the jury under the doctrine of last clear chance. *Redmon v. R. R.*, 195 N.C. 764, 143 S.E. 829; *Miller v. R. R.*, 205 N.C. 17, 169 S.E. 811; *Newbern v. Leary*, 215 N.C. 134, 1 S.E. 2d 384; *Aydlett v. Keim*, 232 N.C. 367, 61 S.E. 2d 109. This doctrine is applicable only in the event it is made to appear that after discovering plaintiff's peril there was an appreciable interval of time during which the defendant by the exercise of ordinary care could have avoided the effect of plaintiff's prior negligence. *Ingram v. Smoky Mountain Stages, Inc.*, 225 N.C. 444, 35 S.E. 2d 337.

The judgment of nonsuit was properly entered.

Affirmed.