ALTON MEDLIN v. SPURRIER & CO., INC.

(Filed 16 December, 1953.)

**1. Automobiles § 18e: Negligence §§ 10, 21—**

Evidence tending to show that defendant was parked on the left side of the street and turned his car diagonally across the street to the right in plaintiff's lane of travel, that plaintiff immediately applied his brakes upon seeing defendant's car but was unable to avoid the collision, is *held* insufficient to support the submission of the issue of last clear chance.

**2. Automobiles § 18h (2)—**

Evidence tending to show that before pulling his car out from its parked position on the left side of the street defendant looked to his rear and saw no car coming and drove diagonally across the street into an intersection in the path of plaintiff's car which was approaching from his rear, together with evidence that plaintiff's car left skid marks for a distance of some forty feet, is *held* sufficient to be submitted to the jury on the issue of plaintiff's negligence in defendant's cross action.

**3. Automobiles §§ 12a, 18i: Trial § 31b—Charge held for error in failing to instruct jury on material aspect presented by evidence.**

Where the evidence tends to show that the collision occurred at an intersection within a city, an instruction to the effect that in the absence of evidence that the accident occurred in a business or residential district, the maximum statutory limit would be fifty-five miles per hour, without an instruction that the fact that the speed of a vehicle is lower than the statutory limit does not relieve the driver of the duty to decrease speed when approaching an intersection or when special hazards exist with respect to pedestrians or traffic, etc., must be held for reversible error. G.S. 1-180.

APPEAL by defendant from *Crisp, Special Judge,* and a jury, at May Civil Term, 1953, of GASTON.

Civil action to recover for property damage resulting from a collision of two motor vehicles on a street in the City of Gastonia.

The collision occurred in the daytime. The plaintiff was driving his 1949 Buick automobile; Paul Crawford, the defendant's pick-up delivery truck. Both vehicles were traveling eastwardly on Main Avenue, approaching the intersection of Whitesides Street, which runs north and south. As the plaintiff came around a slight curve in Main Avenue, the defendant's truck was parked in front of Siler's Wholesale Grocery store on the north side of Main Avenue, headed toward Whitesides Street. As the plaintiff approached the truck, it pulled out from its parked position and angled across the Avenue into the plaintiff's line of travel on the right, or south, side. The collision occurred in or near the intersection of Whitesides Street. From the place where the defendant's truck was parked, it is about 50 feet eastward to the intersection of Whitesides

Street. On the east side of Siler's Wholesale Grocery is a vacant lot, and just east of the vacant lot is a house which is located at the intersection. There is another grocery store just west of Siler's Wholesale Grocery, and "west of the grocery store there are two or three houses until you get to the Trenton Mill, then for the next 200 feet there is the Trenton Mill. Between 350 and 450 feet on the north side of Main (Avenue) is taken up by Trenton Mill, the grocery store, Siler's Grocery, and the residences." (Direct examination of Police Officer Bates.) Main Avenue is paved. The various witnesses estimated its width at from 18 to 24 feet, and the width of Whitesides Street at from 14 to 18 feet. Police Officer Hugh Bolick described the pick-up truck as being 1½ ton capacity, with "slatted body about 3½ to 4 feet high. . . . not higher than the cab . . . (and) from 6 to 8 feet long."

The plaintiff testified in part: "I was going east on Main Street along about 25 miles an hour, was coming around a little curve in the street and the Spurrier wholesale truck was parked on the left side of the road headed east. . . . As I got directly behind it, the truck pulled out in front of me from a 45 to a 60 degree angle, and I didn't have time to stop and avoid hitting it. . . . I was right on the truck when I saw it cut across the street. . . .; at the time I touched my brakes he was into the side of me. . . . The truck came from the curb at a normal rate of speed of around 10 miles an hour. My car collided with the right side . . . the door was bent in. The whole left front side of my car was damaged including the bumper, grill, hood, and radiator. . . . I would say it's 30 to 40 feet from the point of the curve I had just come around to the point of collision. As you approach this curve you can see around it from the edge of the Trenton Mill, about 50 yards away. . . . With reference to the Trenton Mill, the curve is on the easterly side and Trenton Mill is on the north side of the street. From the easterly end of the Trenton Mill it is 40 or 50 yards to the intersection. . . . There are no other business establishments near the point of accident, except I believe there is a little grocery store, then Siler Wholesale. There are houses on the right and on the left, too, . . . I applied my brakes prior to the collision. I wasn't over 5 feet from the truck when I applied them. It happened so quick, I was about 10 or 12 feet away from the truck before I applied my brakes." Cross-examination: "I would say . . . I slid about 5 feet, . . . The truck had started straightening back up when I hit him. . . . I was in my extreme right-hand lane. My skidmarks went right up to the edge of Whitesides Street and extended backward about 5 feet. I am supposed to have four-wheel brakes, and my brakes were in good condition. I guess I did slide my front tires as well as the rear tires. I couldn't have been going very fast when I passed the Trenton Mill. I had stopped at the intersection on the other side."

The defendant then offered the testimony of a number of witnesses.

Paul Crawford, the driver of the truck, testified: ". . . I was parked in front of the building (Siler's Wholesale Grocery store). . . . There is no curb there, but it was parked about where it would ordinarily be. I was in the bounds of the street, . . . From the eastern corner of Siler Grocery to Whitesides Street is around 40 feet. . . . I stopped at Siler Grocery to get a package. I put it on the truck. Got back in my truck, looked out of my right window to see if anyone were coming near. I saw no one, and I started off with the intention of going into Whitesides Street back to Franklin Avenue. All of a sudden I heard the screech of wheels, sound of a horn, and a crash all together. I tried to pull back to avoid it, and pulled across to the east side of Whiteside(s) Street. . . . The . . . collision took place just as I was about to turn in Whitesides Street. . . . I was in the intersection of Whitesides Street headed east on Main aiming to make a turn to the right down Whitesides Street. . . . My right hand door, the running-board, and the cab were about the worst damaged. The truck was struck just behind the door. When I pulled off from Siler Grocery, I was coming uphill with a load and making about five miles an hour." Cross-examination: ". . . I looked out of the right window before I left the curb, and didn't see Mr. Medlin. I could see all the way back to the Trenton Mill. . . . I had general merchandise on my truck, . . . The slats on my truck bed do not go over the cab. It goes to the top of it. . . . I couldn't see through the rear window, that's why I used the side window, the door window. . . . I leaned over to look out of the right window, I stuck my head out all of the way far enough to see back behind me. I had my motor running. I slid back into my seat, put it into gear and pulled out into the street at an angle." Redirect examination: "I saw two black marks on the pavement leading up to the rear of Mr. Medlin's car. . . . they were from 40 to 45 feet long." Recross-examination: "The marks . . . extended from about the center of Whitesides Street back to the westerly intersection of Main for a distance of approximately 40 or 45 feet. After the collision my truck traveled about 18 feet. I was hit just about the middle of Whitesides, knocked and pushed . . . you would say, to the curb. I had hydraulic brakes on the truck. I applied them as soon as I heard the screech of wheels."

Police Officer Hugh Bolick testified in substance: that he went to the scene of the collision; that the truck was sitting on the southeast corner of Whitesides and Main with the front wheels against the curb, and that the Buick was sitting right side of the truck. This witness said: "There was two black lines in the street . . . They ran right up to the back wheels of the Buick. Those marks were about 45 feet long." Cross-examination: ". . . Mr. Medlin said he was coming down Main Street

around 25 miles an hour and the truck pulled out and he hit the truck. . . . I asked him did his car skid that far at 25 miles an hour, and he said again that he was driving 25. . . . The skid marks were around 4 feet from the curb.

"Q. I'll ask you if you don't know that a vehicle will travel a total distance of 50.1 feet after the brakes are applied when it is traveling 25 miles an hour?

"A. No, it won't. We made a test on a '52 Pontiac. West Main Street has a slight incline going up from west to east. It's an asphalt street and the test we made with a Pontiac was on an asphalt road on level ground. I don't know what kind of tires were on the Pontiac. The Pontiac had four-wheel brakes. . . . and we found that you traveled only 15 feet at 25 miles an hour after you applied brakes."

Other defense witnesses estimated that the tire marks back of the plaintiff's Buick extended a distance of from 40 to 45 feet.

Police Officer G. S. Bates testified that "From the intersection of Whitesides and Main, looking back toward the Trenton Mill, you have a clear vision of around 250 feet."

C. A. Froneberger testified that "You can see 500 feet from the north side of Main at the intersection looking in a westerly direction down toward Trenton Mill. . . . There is not too much of a curve between Trenton Mill and Whitesides Street."

W. B. Armstrong testified: ". . . I looked westerly on Main Street from the front of Siler Grocery, and from that point I would say it is 200 yards down to the intersection of Main and Trenton which you can see. I was standing just about in front of Siler Grocery. I was on the sidewalk when we were looking that way. I believe it would be as good or better view looking from a truck 10 feet south of the curb."

The gravamen of the plaintiff's cause of action as alleged in his complaint is that the defendant's truck driver was negligent in that he operated the truck (1) without keeping a proper lookout, (2) in a careless and reckless manner, (3) that he drove the truck into the main-traveled portion of Main Avenue from a parked position on the left-hand side without first ascertaining that such movement could be made in safety, and (4) that he failed to yield one-half of the main-traveled portion of the street to the plaintiff.

The defendant denied generally the material allegations of the complaint, and by way of further answer alleged negligence on the part of the plaintiff in approaching the intersection of Whitesides Street and Main Avenue (1) at an unlawful and excessive rate of speed, (2) without keeping a proper lookout, and (3) without keeping his car under proper control. The defendant pleaded the foregoing negligence of the plaintiff both as the sole proximate cause of the collision and, alternately, as con-

tributory negligence barring recovery. And treating these alleged aspects of negligence as the sole proximate cause of the collision, the defendant set up a counterclaim for damage to the truck. The defendant also by further defense pleaded the doctrine of last clear chance.

At the close of all the evidence the plaintiff moved for judgment as of nonsuit on the defendant's counterclaim. The motion was allowed. Thereupon, the defendant tendered, and requested the court to submit, an issue of last clear chance. This was refused.

Issues of negligence, contributory negligence, and damages were submitted to the jury and answered in favor of the plaintiff.

From judgment on the verdict awarding the plaintiff damages, the defendant appeals, assigning errors.

*Basil L. Whitener and Grady B. Stott for plaintiff, appellee.*
*Mullen, Holland & Cooke for defendant, appellant.*

JOHNSON, J. The evidence was insufficient to require the submission of the defendant's tendered issue based on the doctrine of last clear chance. No error has been made to appear in respect to the court's refusal to submit this issue. *Aydlett v. Keim,* 232 N.C. 367, 61 S.E. 2d 109; *Ingram v. Smoky Mountain Stages,* 225 N.C. 444, 35 S.E. 2d 337. See also *Matheny v. Motor Lines,* 233 N.C. 673, 65 S.E. 2d 361. The cases relied on by the defendant, including *Newbern v. Leary,* 215 N.C. 134, 1 S.E. 2d 384, and *Morris v. Seashore Transportation Co.,* 208 N.C. 807, 182 S.E. 487, are factually distinguishable.

However, our examination of the record leaves the impression that the evidence relied on by the defendant is sufficient to justify, though not necessarily to impel, the inference that the defendant is entitled to recover on its counterclaim. This made it an issue for the jury. *Maddox v. Brown,* 232 N.C. 244, 59 S.E. 2d 791; *Deaton v. Deaton,* 234 N.C. 538, 67 S.E. 2d 626. See also *Blanton v. Dairy,* 238 N.C. 382, 77 S.E. 2d 922; *Cooley v. Baker,* 231 N.C. 533, 58 S.E. 2d 115; *Stovall v. Ragland,* 211 N.C. 536, 190 S.E. 899. Therefore, the ruling of the trial court in allowing the plaintiff's demurrer to the evidence as to the counterclaim must be held for error.

Next, we note that in the charge the jury's attention was directed to these considerations:

"Gentlemen, we have a statute in North Carolina prescribing the various speeds at which we are permitted to drive automobiles. If you are in a business district you are limited to 20 miles an hour; if you are in a residential district the maximum speed is 35 miles per hour. (And out on the open highway where you are not in a business district or in a residential district the maximum speed is 55 miles per hour. Gentlemen,

the Court instructs you there is no evidence in this case to show that this collision occurred either in a residential section or in a business district under the requirements of the law. The law says in order for a district to be a business district that the territory contiguous to the highway for a distance of 300 feet or more, 75% of it would have to be occupied by business establishments being occupied and used for business purposes, and in a residential district the territory contiguous to the highway, or 75% of it for a distance of 300 feet, would have to be occupied by dwelling houses that were being occupied at the time and business establishments that were occupied at the time. There is not any evidence, gentlemen, in this case that this particular section of West Main Street would fall under either of those definitions as contained in the law. So the Court instructs you that the maximum speed,—I am not instructing you that's the speed this plaintiff had a right to drive at, but that the maximum speed would be 55 miles per hour.)"

To the foregoing portion of the charge appearing in parentheses, the defendant excepted.

Conceding, without deciding, that on the record as presented the evidence is not sufficient to justify the inference that the collision occurred in a residential district as defined by G.S. 20-38 (w) 1, nevertheless, in view of the trial court's positive instruction that the evidence is insufficient to show that the area is a residential district, we think the defendant was entitled to have the jury instructed as to the provisions of G.S. 20-141 (c), which reads as follows: "The fact that the speed of a vehicle is lower than the foregoing limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

The court neither read to the jury the language of the foregoing statute nor undertook to explain or apply its provisions to the evidence in the case. The failure to do so, made the subject of a specific exception and duly brought forward, must be held for error as a failure to comply with the requirements of G.S. 1-180, within the purview of the rule explained and applied by *Ervin, J.,* in *Lewis v. Watson,* 229 N.C. 20, 47 S.E. 2d 484.

Since the case goes back for a new trial, we refrain from discussing the rest of the defendant's assignments of error.

The verdict and judgment below will be set aside to the end that the defendant may have a new trial in accord with this opinion, and it is so ordered.

New trial.