### TOMMY FARR CLAYTON v. JAMES WADE RIMMER.

(Filed 12 June 1964.)

**1. Automobiles §§ 38, 39—**

Evidence that defendant's car, traveling in a 55 mile per hour zone, left skid marks for 126 feet to the point of impact and 33 feet of scuff marks beyond the point of collision, *held* not to support an inference that defendant was traveling at excessive speed.

**2. Automobiles § 42g—**

Evidence that plaintiff, traveling west along a servient highway, stopped before its intersection with a dominant highway, that lights of a car approaching from the south could be seen for a distance of some 265 to 300 feet, and that plaintiff drove into the intersection in attempting to make a left turn and had traveled a distance of 12 feet when he was struck by defendant's car, which approached from the south, *is held* to show contributory negligence as a matter of law on the part of plaintiff.

APPEAL by defendant from *Latham, S. J.,* November 11, 1963 Session of ORANGE.

This action for personal injuries grows out of a collision at the intersection of the Old County Home and Cedar Grove-Efland Roads in Orange County on October 10, 1958 at about 10:30 p.m. between automobiles driven by the plaintiff and defendant. Plaintiff alleges: Defendant, traveling north on the Cedar Grove-Efland Road at an excessive rate of speed and without keeping a proper lookout, collided with plaintiff's automobile which was first in the intersection and making a left turn. As a result, plaintiff sustained serious and permanent personal injuries. Defendant alleges: He approached the intersection at a lawful rate of speed. Plaintiff, traveling west, drove suddenly into his path from a stopped position on the County Home Road, a servient highway. Defendant denied any negligence on his part and alleged plaintiff's sole negligence. He conditionally pled plaintiff's contributory negligence and counterclaimed for his personal injuries and property damage.

Plaintiff's evidence tended to show these facts: The County Home Road is unpaved and runs east and west. Stop signs make it servient to the Cedar Grove Road which runs north and south and is paved with asphalt and gravel to a width of eighteen feet with dirt shoulders approximately six feet wide. Plaintiff was very familiar with the intersection and knew he had to be careful about looking. Driving west in a 1951 Oldsmobile, he approached it from the east on County Home Road, traveling slightly downhill. Plaintiff testified: "My car stopped dead still one and a half feet from the paved portion of the road. . . . I looked first to my right and saw nothing. Then I looked to my left, and I saw nothing. Then I put my car in motion and started across the highway intending to turn left, and before I knew it I was hit. I seen the lights just like a flash hit me, I sure did." Plaintiff also testified: "(A)s I made my turn I seen a flash of light come into the side of my car. . . . As I started out into the intersection, I said I was making a left turn. I would say I was going three to five miles an hour, as I started into the intersection. My car had an automatic transmission. As to where my automobile was at the time these lights came into the side of it, I was making a left turn, the front end was a couple feet across the center of the road . . . I said I never did see it except just a flash, a light hitting me in the center." Plaintiff's wife, who was with him, testified that she also saw nothing.

According to plaintiff, he could see from two hundred and fifty to two hundred and sixty-five feet to the south where the road curved to the east. According to the investigating officer, a motorist stopped on the east side of the intersection could see three hundred feet to the south. The plaintiff's automobile was damaged on the left side from the front fender and bumper to the front door. The main impact was behind the left front wheel. The front bumper, the grill, and both front fenders of defendant's 1950 Ford were damaged and pushed back.

The investigating officer testified that he found dirt and debris in the northbound lane of the Cedar Grove-Efland Highway in the northeast quadrant of the intersection. There was a straight line of heavy skid marks, one hundred and twenty-six feet long south of the debris. Marks thirty-three feet long led northwesterly from the debris to the defendant's car which had stopped north of the intersection on the western edge of the road headed north. The plaintiff's car came to rest north of the intersection on the eastern edge of the road thirty feet from the debris, also headed north. The marks leading from the debris to the plaintiff's vehicle "were caused by the car sliding sideways." After the collision, plaintiff was lying beside the defendant's automobile with his feet underneath the right side of that car. He had sustained serious injuries.

Plaintiff told the investigating officer that he stopped at the stop sign on the County Home Road, looked both ways, saw nothing coming, and just as he pulled into the intersection defendant's car hit him; that it was coming so fast he had no time to do anything. Defendant told the patrolman that he approached the intersection at fifty miles per hour; that he saw the lights of plaintiff's car at the stop sign and took his foot off the gas; that when he saw the car was stopped he accelerated again; and that just as he got to the intersection the plaintiff pulled out in front of him. The area about the intersection was farm country and the weather was clear and dry. On cross-examination plaintiff stated that he did not deny that the collision could have occurred where the officer said the debris was but he did not think so; that he did not know exactly in feet where his car was on the highway when it was struck.

At the conclusion of plaintiff's evidence the defendant moved for judgment as of nonsuit. This motion was overruled. Defendant offered no evidence but withdrew his counterclaim and renewed his motion for nonsuit which motion was again denied. The jury answered the issues in favor of the plaintiff. From judgment entered on the verdict the defendant appealed assigning as error, *inter alia,* the failure of the court to allow his motion for judgment as of nonsuit.

*Bryant, Lipton, Bryant & Battle by Victor S. Bryant, Jr., for plaintiff.*

*Jordan, Wright, Henson & Nichols by William D. Caffrey for defendant.*

PER CURIAM. The reciprocal duties of motorists approaching an intersection from dominant and servient highways have been often stated. *Matheny v. Motor Lines,* 233 N.C. 673, 65 S.E. 2d 361; *Blalock v. Hart,* 239 N.C. 475, 80 S.E. 2d 373.

This intersection collision occurred in a rural area where the maximum legal rate of speed was fifty-five miles per hour. Defendant told the investigating officer that he was driving only fifty miles per hour. Since neither the plaintiff nor his wife ever saw the defendant's approaching automobile, plaintiff relies on the one hundred and twenty-six feet of skid marks south of the debris and the thirty-three feet of scuff marks which led north from the debris to the plaintiff's car to establish excessive speed on the part of the defendant. We do not think the evidence will support an inference that defendant was exceeding the speed limit. *Williamson v. Randall,* 248 N.C. 20, 102 S.E. 2d 381. It is noted that ordinarily a car going fifty miles per hour requires two hundred and eleven feet in which to stop on a hard, dry, level surface.

However, irrespective of any negligence on the part of the defendant, plaintiff's evidence clearly reveals contributory negligence which will bar his recovery. The lights of defendant's approaching vehicle were visible for two hundred and sixty-five to three hundred feet before it reached the intersection. After stopping a foot and one half from the intersection, plaintiff drove a total distance of approximately twelve feet — as he concedes in his brief — and was struck. We think the evidence discloses that he failed to see what he should have seen.

Reversed.