## CLYDE JIM HOWARD v. WILEY ROGER MELVIN.

(Filed 14 October, 1964.)

**1. Negligence § 11—**

Negligence on the part of the plaintiff bars recovery if such contributory negligence is a proximate cause of the injury.

**2. Automobiles § 17—**

A motorist traveling along a servient highway is not required to stop at the place where the stop sign is located on the highway, but is required to bring his car to a full stop at a place where his precaution may be effective and not to enter upon the intersection with the dominant highway until he exercises due care to see that he may do so in safety, yielding the right of way to vehicles upon the dominant highway.

**3. Automobiles § 42g—**

Evidence to the effect that the motorist traveling east along the servient highway stopped before entering an intersection with a dominant highway at the place where the stop sign was erected, saw no vehicle approaching along the dominant highway, and then without again stopping drove into the intersection and collided in the southeast quadrant of the intersection with a vehicle approaching from the south along the dominant highway, and that a vehicle could be seen approaching from the south for one-quarter to one-half mile, *is held* to disclose contributory negligence constituting a proximate cause of the collision as a matter of law.

APPEAL by plaintiff from *Bundy, J.,* February Civil Session 1964 of SAMPSON.

Action to recover damages for personal injuries sustained by plaintiff as a result of the collision of motor vehicles on January 11, 1961, about 11:45 a.m., in Sampson County, North Carolina, at the intersection of North Carolina Highway No. 242 (N.C. #242) and Rural Paved Road No. 1414 (R.P.R. #1414). The intersection is about one mile north (along N.C. #242) of Salemburg. N.C. #242, the dominant highway, runs generally north and south. R.P.R. #1414, the servient road, runs generally east and west.

In approaching the intersection, defendant was operating his 1955 two-door Ford north on N.C. #242 and plaintiff was operating a 1953 GMC one half ton pickup truck east on R.P.R. #1414. A stop sign faced eastbound traffic approaching the intersection on R.P.R. #1414. The eastbound truck operated by plaintiff had crossed the center line of N.C. #242 ("about ⅔ of the way across the road") when the right front side thereof was struck by the left front of defendant's northbound Ford.

Plaintiff alleged the collision and his injuries were proximately caused by the negligence of defendant. Defendant (1) denied negligence, and (2) conditionally pleaded contributory negligence.

At the conclusion of plaintiff's evidence, the court, on motion of defendant, entered judgment of involuntary nonsuit. Plaintiff excepted and appealed.

*James F. Chestnutt and Miles B. Fowler for plaintiff appellant.*
*Nance, Barrington, Collier & Singleton for defendant appellee.*

BOBBITT, J. In approaching the intersection and at the moment of collision, defendant was proceeding north in his right (the east) traffic lane of N.C. #242. N.C. #242, the dominant highway, "was 21 feet 9 inches wide and marked with a center line." The collision occurred when

the front wheels of the truck "were about center way of the north lane." No part of the truck had actually gone through the intersection.

Plaintiff's allegations, summarized, are that defendant was negligent in that he (1) failed to keep a proper lookout; (2) failed to yield the right of way; (3) operated his car at unlawful and excessive speed; and (4) failed to decrease speed when approaching the intersection.

The only witness who testified he saw defendant's car prior to and at the moment of collision was General Lee Willis. He was standing in front of his blacksmith shop located (approximately 75 feet east of N.C. #242) in the area at the southeast corner of the intersection. Willis testified: "Clyde Jim Howard came to the stop sign and stopped. . . . I was looking at the sign when he came to it, and I saw him stop. Then all at once I heard a car roaring, coming north, and heard a big fuss; a big noise. That car was running at high speed. . . . I saw it about 300 yards, I believe. After Clyde Jim Howard stopped, he pulled on out into the highway. I do not have an opinion as to how far away from the intersection Mr. Melvin's car was at the time Clyde Jim Howard entered the intersection. I saw the collision happen." Willis also testified: "After the car struck the truck, the truck back door was thrown open and Mr. Howard was thrown out. The truck then went into a side ditch. Mr. Melvin's car went north up the road for quite a ways and then stopped. His car went about as far as from here to the back of the courtroom before stopping, that is about 80 feet." With reference to the damage to the vehicles: Willis testified "the right-hand front wheel (of the truck) was knocked out from under it" and the left front of defendant's car "was torn up, all the way back."

The evidence is silent as to skid marks.

According to all the evidence, plaintiff stopped the truck *at the stop sign;* and defendant, when approaching the intersection, had a clear view of the stop sign and of eastbound traffic approaching the stop sign and the intersection.

W. C. Pate, whose testimony relates primarily to conditions at the intersection, testified: "There is a stop sign on the west side of 242 at the southwest corner of the intersection which I measured to be 38 feet from the edge of the pavement on the west side." Plaintiff testified there was a ditch and a wide shoulder between the stop sign and the road; and, although he had not measured it, the stop sign, in his opinion, was not "38 feet from the pavement." Plaintiff testified he believed the distance between the stop sign and the main road to be 19 feet.

The reciprocal rights and duties of motorists when approaching an intersection from dominant and servient highways, particularly in rela-

tion to G.S. 20-158(a), have been often stated. *Matheny v. Motor Lines,* 233 N.C. 673, 65 S.E. 2d 361; *Blalock v. Hart,* 239 N.C. 475, 80 S.E. 2d 373.

The evidence discloses plaintiff stopped the truck at the stop sign, started again and proceeded slowly to and across the traffic lanes of N.C. #242. This evidence affords a basis for the contention that defendant had reasonable ground to assume that plaintiff knew he was approaching an intersecting dominant highway and would keep his truck under control and stop again before entering upon the traffic lanes of N.C. #242. However, we need not determine whether the evidence was sufficient to support a finding that negligence on the part of defendant was a proximate cause of the collision and plaintiff's injuries.

Irrespective of defendant's negligence, if any, unquestionably plaintiff's negligence was a proximate cause of the collision and plaintiff's injuries. This suffices to bar recovery herein.

G.S. 20-158(a) did not require that plaintiff stop *where* the stop sign was located. It required that plaintiff, in obedience to the notice provided by the stop sign, bring his car to a full stop before entering N.C. #242 and to yield the right of way to vehicles approaching the intersection on N.C. #242. *Clifton v. Turner,* 257 N.C. 92, 96, 125 S.E. 2d 339; *Edwards v. Vaughn,* 238 N.C. 89, 93, 76 S.E. 2d 359. "This . . . statute not only requires the driver on the servient highway or street to stop, but such driver is further required, after stopping, to exercise due care to see that he may enter or cross the dominant highway or street in safety before entering thereon." *Jordan v. Blackwelder,* 250 N.C. 189, 193, 108 S.E. 2d 429, and cases cited.

According to plaintiff's testimony: When he stopped, his seat in the truck was even with the stop sign post and his eyes were about five feet above the ground. Nothing obstructed his view and nothing was in sight on N.C. #242 (south) to his right. He "could see to (his) right 75 or 80 yards, perhaps 100 yards." Plaintiff testified: "There wasn't anything to keep me from seeing automobiles coming from towards Salemburg for a distance of at least one-half a mile at that time." Other evidence was in substantial accord. Pate testified: "There is nothing to obstruct the visibility of cars using 242 proceeding north as to vehicles entering 242 from 1414 for a good ¼ of a mile." Again: "Looking across that intersection from 1414 to 242, south, the drivers have equal opportunity to see." Plaintiff testified: "I never looked after I stopped at the stop sign. I did not look back to the right or left again." Plaintiff did not *at any time* see defendant's car.

The only conclusion that may be reasonably drawn from the evidence is that plaintiff entered upon and attempted to cross N.C. #242

when defendant's approaching car was in close proximity to the intersection; that plaintiff, by the exercise of due care, could have but did not see defendant's approaching car; that plaintiff, failing to see what he should have seen, negligently drove the truck directly across the path of defendant's approaching car; and that such negligence on the part of plaintiff was a proximate cause of the collision and plaintiff's injuries.

Decision that plaintiff's evidence discloses contributory negligence as a matter of law is in accord with the following: *Edwards v. Vaughn, supra,* and cases cited; *Badders v. Lassiter,* 240 N.C. 413, 82 S.E. 2d 357; *Edens v. Freight Carriers,* 247 N.C. 391, 100 S.E. 2d 878; *Clayton v. Rimer,* 262 N.C. 302, 136 S.E. 2d 562.

Affirmed.