LEE DERRICK v. CRAIG DWAYNE RAY AND COIT DREWEY RAY

No. 8210SC237

(Filed 15 March 1983)

Automobiles and Other Vehicles §§ 57.1, 79— intersection accident—negligence and contributory negligence—summary judgment improper

> In an action to recover damages for injuries received in an intersection accident when plaintiff's car was struck by defendants' car after plaintiff crossed defendants' lane of travel on the dominant street and reached the median between the two lanes of travel of that street, summary judgment was improperly entered for defendants where plaintiff's forecast of evidence would permit an inference that defendant driver was negligent in speeding or in failing to reduce his speed, defendants' evidence did not conclusively show that plaintiff failed to maintain a proper lookout or to see what was in clear view, and there was a material issue of fact as to whether plaintiff exercised due care in stopping her car within four feet of the intersection and then proceeding across the intersection.

APPEAL by plaintiff from *Bailey, Judge.* Order entered 29 October 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 17 January 1983.

Plaintiff instituted this negligence action against defendants seeking to recover $250,000 in damages. She alleged that around midday on 15 January 1981 she was driving her Volkswagen Rab-

bit toward the intersection of East Juniper Street and North Main Street in Wake Forest, North Carolina; that after stopping and checking for northbound traffic on North Main Street she proceeded to cross the intersection and that as she reached the median between the two lanes of North Main Street a car driven by defendant Craig Dwayne Ray and owned by defendant Coit Drewey Ray struck the left side of plaintiff's Volkswagen. She alleged that defendant Craig Ray was negligent in operating his car at a speed greater than was reasonable under the existing circumstances and at a speed greater than that posted; and that he failed to keep a reasonable lookout, to keep his automobile under control and to decrease his speed in order to avoid the collision. Plaintiff further alleged that the manner in which defendant operated his car amounted to willful and wanton negligence.

In their answer defendants pleaded contributory negligence, alleging that plaintiff failed to keep a proper lookout, failed to yield the right-of-way to defendants' vehicle, failed to stop for a duly erected stop sign and failed to see her way clear prior to entering the intersection. Plaintiff replied that the defendant driver had the last clear chance to avoid the collision.

On 7 August 1981 defendants moved for summary judgment on the ground that plaintiff was contributorily negligent. Judge Bailey allowed the motion after considering depositions and an affidavit. In her deposition plaintiff testified that she stopped her Volkswagen Rabbit approximately four feet from the pavement of North Main Street. She carefully looked to the left and did not see a car coming. As her car reached the median, she first observed defendants' car speeding toward her from her left. Dr. Paul Cribbins, a professor of civil engineering at North Carolina State University employed by plaintiff to prepare an accident reconstruction, stated in an affidavit that:

A. Prior to the accident, Vehicle #2 [driven by plaintiff Derrick] came to a stop on E. Juniper Street at a position where the driver's eye was 10 feet from the eastern curb on N. Main Street and 8 feet from the northern curb of Juniper Street. At this time, Vehicle #1 [driven by defendant Ray] was northbound on N. Main Street approaching the intersection.

B. For the driver of Vehicle #2 to look both ways and accelerate normally across the northbound lanes of N. Main Street to a protected position in the median would require 6.5 seconds.

C. During the 6.5 seconds needed for Vehicle #2 to reach a safe position, Vehicle #1 would have traveled the following distance depending on its speed (assuming that it did not accelerate or brake):

| Speed | Distance Traveled (feet) |
|---|---|
| 20 | 191 |
| 25 | 239 |
| 30 | 287 |
| 35 | 334 |
| 40 | 382 |
| 45 | 430 |
| 50 | 478 |
| 55 | 526 |
| 60 | 573 |

D. Because of sight distance obstructions caused by a row of tree trunks along the east side of N. Main Street, sight distance of the driver of Vehicle #2 is limited to 315 feet as shown on the attached sketch. Thus, it appears from the table above that any drivers exceeding 33 m.p.h. on N. Main Street could create a hazard for vehicles entering the intersection from Juniper Street.

E. Based upon inspection of Vehicle #2 and review of photographs of Vehicle #1, I would estimate the speed of Vehicle #1 at impact to have been no less than 20 m.p.h. and no more than 30 m.p.h.

F. Using an average impact speed of 25 m.p.h. and a skidding distance of 99 feet (taken from accident report) for Vehicle #1, its speed along N. Main Street at the beginning of its skid would have been at least 49 m.p.h. (For impact speeds of 20 and 30 m.p.h., the travel speed of Vehicle #1 would have been 46.7 m.p.h. and 51.8 m.p.h. respectively.)

G. At 49 m.p.h., Vehicle #1 would need 468 feet of sight distance to avoid hitting Vehicle #2 (only 315 feet provided).

Dr. Cribbins made the following conclusions:

   A. A horizontal sight distance problem exists at the intersection of N. Main and Juniper Streets. Because of the trees along N. Main Street, drivers on Juniper may not be able to see northbound cars in time to safely cross to a protected position.

   B. Drivers traveling along N. Main Street faster than the speed limit (35 m.p.h.) will travel a distance greater than the available sight distance.

   C. Based upon skid marks and impact speed estimates, Vehicle #1 (Ray) was traveling 49 m.p.h.

   D. That at a speed of 49 m.p.h. Vehicle #1 (Ray) would be outside of the sight distance of Vehicle #2 (Derrick) when Vehicle #2 (Derrick) began to cross N. Main Street.

   E. That any vehicle traveling north on N. Main Street at the speed limit (35 m.p.h.) that was located outside of the sight distance of Vehicle #2 (Derrick) when Vehicle #2 (Derrick) began to cross N. Main Street, would be able to safely stop prior to reaching Vehicle #2 (Derrick) or colliding with Vehicle #2 (Derrick).

   F. A vehicle traveling along N. Main Street at the speed limit would need only 3.3 seconds in which to react and brake his vehicle to a safe stop.

Both defendant Craig Ray and a passenger in defendants' vehicle testified in their depositions that plaintiff pulled out in front of them without stopping at the intersection. Defendant indicated that just prior to the collision he was not going over 45 m.p.h. From the order of the trial court allowing defendants' motion for summary judgment, plaintiff appealed.

*Kirk, Tantum, Hamrick & Gay, by John E. Tantum, for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by James K. Dorsett, III, for defendant-appellees.*

WELLS, Judge.

Summary judgment under G.S. 1A-1, Rule 56 is awarded to a party if he shows to the court that no genuine issues of material

fact exist and that he is entitled to summary judgment as a matter of law. *Hockaday v. Morse,* 57 N.C. App. 109, 290 S.E. 2d 763, *disc. review denied,* 306 N.C. 384, 294 S.E. 2d 209 (1982).

> It is only in the exceptional negligence case that the rule should be invoked. *Rogers v. Peabody Coal Company,* 342 F. 2d 749 (6th Cir. 1965). This is so because even in a case in which there may be no substantial dispute as to what occurred, it usually remains for the jury, under appropriate instructions from the court, to apply the standard of the reasonably prudent man to the facts of the case . . . .

*Robinson v. McMahan,* 11 N.C. App. 275, 280, 181 S.E. 2d 147, 150 (1971), *cert. denied,* 279 N.C. 395, 183 S.E. 2d 243 (1971). "[W]hen the facts are such that reasonable men could differ on the issue of negligence courts have generally considered summary judgment improper." *Gladstein v. South Square Assoc.,* 39 N.C. App. 171, 174, 249 S.E. 2d 827, 829 (1978), *disc. review denied,* 296 N.C. 736, 254 S.E. 2d 178 (1979). In applying this standard to the case *sub judice,* summary judgment for defendants is proper only if the forecast of evidence either fails to show negligence on their part or establishes plaintiff's contributory negligence so clearly that reasonable men could not differ.

Defendants argue that the forecast of evidence clearly established that had plaintiff brought her vehicle forward from the point where she allegedly stopped and looked again before entering the intersection, she would have seen defendants' car. They contend that because of her failure to do so, she was contributorily negligent as a matter of law. Defendants rely heavily upon the testimony of Dr. Cribbins that once a person passes the point where plaintiff stopped her vehicle, the "blocked view no longer exists." Earlier in his deposition, however, Dr. Cribbons had testified, "[T]here is still a blind spot in my judgment when she passes that point." Also in his affidavit, Dr. Cribbins concluded that a "horizontal sight distance problem" exists at the intersection. Defendants' evidence does not conclusively show that plaintiff failed to maintain a proper lookout or failed to see what was in clear view.

Defendants have cited numerous cases to support their position. Careful examination of these cases, where the courts found contributory negligence as a matter of law, reveals distinguishing

characteristics. In *Howard v. Melvin*, 262 N.C. 569, 138 S.E. 2d 238 (1964), the plaintiff believed he stopped 19 feet from the main road before attempting to cross the intersection. In *Edwards v. Vaughn and Mims v. Vaughn*, 238 N.C. 89, 76 S.E. 2d 359 (1953), the plaintiff stopped 15 feet from the intersection at a point where he had an unobstructed view of only 150 feet and where he saw defendant's car approaching. The plaintiff in *Badders v. Lassiter*, 240 N.C. 413, 82 S.E. 2d 357 (1954), stopped 10 to 12 feet from the intersection, saw defendant's car about a block away on the dominant highway and proceeded across the intersection. In *Morrisette v. Boone Co.*, 235 N.C. 162, 69 S.E. 2d 239 (1952), plaintiff stopped 30 feet from the intersection before proceeding across. In the remaining two cases cited by defendants, the Supreme Court upheld findings of contributory negligence as a matter of law even though the plaintiffs stopped within six feet of the intersection. *Warren v. Lewis*, 273 N.C. 457, 160 S.E. 2d 305 (1968) and *Matheny v. Motor Lines*, 233 N.C. 673, 65 S.E. 2d 361 (1951). The plaintiff in *Warren, supra*, however, pulled onto the main highway from a private driveway and collided with defendant's vehicle when his view from the intersection to his right was unobstructed to the top of a hill 400 to 600 feet west of the intersection and an automobile could be seen an additional 50 feet beyond the crest. The Court noted that plaintiff was not wearing glasses when the officer arrived at the scene even though he was restricted to them. The plaintiff in *Matheny, supra*, pulled out in front of a truck going 30 m.p.h. when he had an unobstructed view of approaching traffic. The Court found that "the over-all picture of the collision is one of negligence on the part of the plaintiff in attempting to cross the highway immediately in front of the approaching truck with its bulk and speed plainly visible." *Id.* at 680-681, 65 S.E. 2d at 367.

The facts as presented in the forecast of evidence now before us do not establish contributory negligence so clearly that no other conclusion may be reasonably drawn therefrom. Reasonable men could differ on the issue of whether plaintiff's stopping her Volkswagen within four feet of the intersection constituted contributory negligence. Pursuant to G.S. 20-158(a)(1), plaintiff was required "to come to a complete stop at the entrance to that portion of the intersection designated as the main traveled or through highway." Her failure to stop, however, is not considered

negligence or contributory negligence per se. G.S. 20-158(d). Under this statute

> [i]t is the duty of the driver of a motor vehicle on such servient highway to stop at such time and place as the physical conditions may require in order for him to observe traffic conditions on the highways and to determine when, in the exercise of due care, he may enter or cross the intersecting highway with reasonable safety.

*Edwards v. Vaughn and Mims v. Vaughn, supra,* at 93, 76 S.E. 2d at 363. In the case *sub judice,* there was a material issue of fact, upon which reasonable men could differ, as to whether plaintiff exercised due care in crossing the intersection.

In a similar fact situation, the North Carolina Supreme Court upheld judgment in plaintiff's favor. *Hawes v. Refining Co.,* 236 N.C. 643, 74 S.E. 2d 17 (1953). In *Hawes,* the plaintiff presented evidence that he was traveling along the servient road and stopped about five feet from the intersection. Plaintiff then looked to the south and saw nothing coming. His view in that direction was about 100 yards. Plaintiff drove halfway into the main road at a speed of 5 m.p.h. before he was struck by defendant's car. Defendant was traveling at a speed of 50 to 55 m.p.h. In upholding the judgment for plaintiff, the Court emphasized:

> [A]pplying mathematics to the rate of speed at which the evidence of plaintiff tends to show the two automobiles were traveling, it is not unreasonable to infer that while plaintiff's automobile was starting and traveling ten feet or more, the automobile of defendant could come from beyond the range of vision of one stopping at the intersection, whereas if traveling at a prudent rate of speed it would not be expected to do so. In other words, the case does not come within the purview of those cases where the evidence tends to show that the driver failed to see what was in clear view.

*Id.* at 651, 74 S.E. 2d at 22.

When the forecast of the evidence here is viewed in the light most favorable to plaintiff, it shows negligence on defendants' part and raises a genuine issue of material fact as to any contributory negligence on plaintiff's part. We hold that the trial

court erred in granting summary judgment for defendants, since a reasonable inference could be drawn that plaintiff exercised ordinary care in attempting to cross the intersection and that defendant Craig Ray's speeding or failure to reduce his speed was the proximate cause of the collision.

Reversed.

Chief Judge VAUGHN and Judge BRASWELL concur.