MRS. MAMIE L. GARNER v. JESSE T. PITTMAN AND EDWARD E. SIPE.

(Filed 18 March, 1953.)

**1. Negligence § 17—**

In an action for negligence, plaintiff must show that there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which defendant owed plaintiff under the circumstances, and that such negligent breach of duty was the proximate cause of the injury or damage, which is a cause which produces the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was likely under all the facts as they existed.

**2. Negligence § 19a—**

What is negligence is a question of law, and when the facts are admitted or established, it is for the court to determine whether defendant was negligent and, if so, whether such negligence was the proximate cause or. one of the proximate causes of the injury.

**3. Negligence §§ 19b (1), 19d—**

A demurrer to the evidence is properly sustained in negligence cases when all the evidence taken in the light most favorable to plaintiff fails to show any actionable negligence on the part of defendant, or when it clearly appears that the injury complained of was independently and proximately produced by the wrongful act, neglect, or default of an outside agency or responsible third person.

**4. Negligence § 7—**

Foreseeability is the test of whether the intervening act of a third person is such new and independent cause as to insulate the negligence of the original wrongdoer, since if the original wrongdoer could reasonably foresee the intervening act and resultant injury, the sequence of events is not broken by a new and independent cause.

**5. Automobiles § 8a—**

Even in the absence of statutory requirements, the operator of a motor vehicle must exercise that degree of care which an ordinarily prudent man would exercise under similar circumstances, and in the exercise of such care it is his duty to keep his vehicle under control and keep a reasonably careful lookout so as to avoid collision with persons and vehicles on the highway.

**6. Automobiles § 8i—**

The driver of a vehicle entering a public highway from a private road or drive is required to look for vehicles approaching on the highway and to look at a time when his precaution may be effective, and to yield the right of way to vehicles traveling on the highway, G.S. 20-156 (a). Operators of vehicles on the highway, in the absence of anything that gives or should give notice to the contrary, may assume, and act upon the assumption, even to the last moment, that an operator entering the highway from a private road or drive will yield the right of way as required by law.

**7. Automobiles §§ 18d, 18h (4), 21—In guest's action, nonsuit of defendant whose negligence was not proximate cause is correct.**

Plaintiff's evidence tended to show that she was a passenger in a car that was being driven from a private drive midway a warehouse building into a highway, that the driver of the car crossed the street slightly diagonally in order to turn left into the stream of traffic on the far side of the highway, that he did not see the car driven by the other defendant approaching along the highway from his right until it was almost upon him, although his view in the direction from which it approached was clear and unobstructed for 200 or 300 feet, and that the other car crashed into the right side of his car. *Held:* Even conceding that the driver of the other car was exceeding the speed restrictions applicable, plaintiff's evidence discloses that the negligence of the driver of the car in which she was riding, in failing to yield the right of way to the vehicle traveling along the highway was the sole, efficient proximate cause of the collision, and that the driver of the other car was not under duty to anticipate such negligence, and therefore such negligence insulated any negligence of the driver of the other car, and his motion to nonsuit was properly allowed.

APPEAL by plaintiff from *Stevens, J.,* at September Term, 1952, of JOHNSTON.

Civil action to recover for personal injury resulting allegedly from actionable negligence of defendants.

The action arises out of a collision between an automobile, a Hudson 4-door sedan, owned and operated by defendant Jesse T. Pittman, son-in-law of plaintiff, and in which she was riding, and an automobile, a Buick with attached two-wheel trailer on which a boat was loaded, operated by defendant Edward E. Sipe, accompanied by his wife and two children. The collision occurred about 1 o'clock on the afternoon of 11 August, 1950, on Market Street in the town of Smithfield, North Carolina. At the time the Sipe automobile was traveling east and in the line and lane of eastbound traffic, and the Pittman automobile had just emerged from a private driveway about midway of a tobacco warehouse, known as the Perkins Warehouse, located on the north side of Market Street between First and Second Streets, and was proceeding across the street, turning to left, that is, east, to get into the line and lane of eastbound traffic. The tobacco warehouse is on the street, "only the sidewalk is between it and the street." Market Street is in estimate of the chief of police "about 40 feet or more wide in front of the Perkins Warehouse," and, in opinion of defendant Pittman "about 60 feet wide." There was an unobstructed view from the warehouse along Market Street in westerly direction for 200 to 300 feet to the bridge over Neuse River. Cars were parked along Market Street on the south or right-hand side of the eastbound traffic.

As against defendant Pittman plaintiff alleges in her complaint these acts of negligence, as a proximate cause of her injuries: That he attempted to drive his automobile out of the warehouse into Market Street,

GARNER v. PITTMAN.

at a time when he saw, or by the exercise of due diligence, should have seen the automobile of defendant Edward E. Sipe approaching at a fast and unlawful rate of speed along Market Street, and drove same into the path of the Sipe automobile, and that he entered the street without blowing his horn or giving other proper and sufficient signal as he was required to do under the circumstances and conditions then existing and in accordance with the laws of the State.

And as against defendant Sipe, plaintiff alleges in her complaint these acts of negligence, as a proximate cause of her injuries: That he operated his automobile in the business section of the town of Smithfield on Market Street at an unlawful and reckless speed of approximately fifty miles per hour when, and immediately before striking the automobile in which she was riding, he saw or by the exercise of due diligence should have seen that this automobile was entering Market Street from a warehouse into the path of his automobile, and failed to use his brakes or otherwise stop, and failed to give any signal, by horn or otherwise, that he was approaching.

Upon the trial in Superior Court plaintiff testified as a witness in her own behalf, and offered the testimony of defendants Jesse T. Pittman and Edward E. Sipe and the testimony of the Chief of Police of the town of Smithfield, North Carolina.

Plaintiff, as a witness for herself, testified: ". . . I was riding on the front seat with Jesse Pittman. He drove right out of the warehouse across the street. He did not stop his automobile between the time he left the warehouse and the time the wreck occurred . . . When Jesse Pittman got into the street he tried to turn east to go home. He had crossed the center of the street before he turned east. . . . I did not see any automobile coming from the east. After we got into the middle of the street I saw an automobile coming from towards the river traveling east. It was about 100 feet from us and was coming at a speed of about 50 miles per hour. That automobile came on and whirled to its right a little and then cut back and struck the Hudson automobile on its side where I was sitting. It hit both doors . . . Before it struck our car it slowed up some and was traveling about 30 or 35 miles per hour when it hit our car."

Then, on cross-examination, plaintiff continued her testimony: ". . . I didn't look to the left, but I looked to my right toward the river. When I saw the car it was on this side of the river bridge. Jesse's car was up in the middle of the street . . . and I said I guessed when I saw the car it was about 100 feet away . . . on this (east) side of the river . . . I watched it until it hit us, but I didn't say anything to Jesse Pittman . . . I think we had just crossed over the center of the street when we were struck . . . Jesse Pittman did not go out of the warehouse straight across

the street, but more to his left or east and when he got across the middle of the street he turned to his left. I did not have time to tell Jesse Pittman that some other car was coming from the west and I don't know which way he looked. I looked west toward the bridge and saw Mr. Sipe coming toward us . . . There were some cars parked on the street on his right. Jesse Pittman went something like the length of his car after the collision . . . He did not blow his horn when he drove into the street . . . he didn't put his brakes on until about the time we hit, I suppose . . ."

Defendant Jesse Pittman, called as a witness by plaintiff, testified in pertinent part: ". . . I drove out of the front of the warehouse on Market Street. I did not see any automobile coming along Market Street from toward Raleigh. . . . When I first saw the automobile driven by Mr. Sipe it was coming into the side of me and was between me and the curbing. I have no idea as to the speed it was traveling when I first saw it, or where it came from. When I first came out of the warehouse there was a car coming to my left and I stopped while it went by. I looked both ways and did not see any car coming either way and pulled out and got started up and was going from second gear into high gear. . . . By that time Mr. Sipe came around from where there were not any cars and came slanting into me."

Then this witness continued on cross-examination: ". . . I made a turn to the east when I got into the street. I had traveled about 90 feet from the warehouse before I saw the Sipe car coming from my rear. It came between me and my right-hand side. I first came out of the warehouse and stopped. There was a line of cars on my right-hand side parked against the curbing and two or three cars to my left. I was straight in front of the driveway about 90 feet away and that was when I saw the Sipe car. From the time I made my turn I did not stop. I slowed down because the car spit back through the carburetor. . . . There was nothing to obstruct my view from the east and west."

And on cross-examination by attorney for defendant Sipe, the witness continued: ". . . When I came out of the warehouse I could see the Neuse River bridge about 100 yards away . . . with cars parked on both sides east and west traffic had room to pass. I stopped before entering Market Street and waited for one car to pass going west. Then I did not go into Market Street until I looked both ways and I could not see anything between me and the river bridge. There was nothing to obstruct my view. No cars were coming from the west until Mr. Sipe's car came by and I had not seen it because it was not between me and the river bridge. It struck my car in the center on the right side. My car was struck by the left front fender of the Sipe automobile. I came out in front of the warehouse and did not make a gradual left turn. My car

stopped . . . about 20 feet away. I went back to where the Sipe car was near the warehouse . . . about 96 feet on this side of the warehouse. I said I did not see the Sipe car between me and the bridge . . . When I came out of the warehouse and entered Market Street and stopped my rear wheels were at the curb like it would be if I had driven up to the curb and parked, and I could see to the river bridge . . . I told Mr. Sipe I didn't see his car until the impact . . . When I went into Market Street there was no car approaching from the east within a distance of 100 feet from me."

Defendant Edward E. Sipe, called as a witness for plaintiff, testified in pertinent part: "I live in Schoolfield, Virginia, and on August 11, 1950, I was driving in Smithfield . . . When I came into Market Street . . . I saw the Pittman automobile just beyond the Buick building. When I first saw it, it was probably 150 feet away. It was over on the other side of the street coming out of the warehouse to my left and on the north side of Market Street. He looked like he was attempting to come into the street. His car was still, or approximately so. I had been trailing traffic into the edge of Smithfield for four or five miles and there was a car in front of me as I was coming into town 30 or 40 feet in front of me. Mr. Pittman stopped to let a car go by in front of him and then made his attempt to come out, and I blew my horn. He came out anyway and when he made his attempt and started to go, it looked like his car stalled or something before it came out and when he did get started I was too close to stop. I didn't hear him sound any horn and didn't see any signal. I did not see any car going west pass in front of him. The Buick place is almost across from the entrance to the Perkins Warehouse . . . Mr. Pittman came out on Market Street into my line of traffic, and his wheels did not get all the way across the middle of the street. The rear end of his automobile was not across the center line."

Then on cross-examination, this witness continued: "When I came to the other side of the river bridge I was traveling around 45 miles per hour pulling my boat and trailer. When I first saw Mr. Pittman I was traveling about 30 to 35 miles per hour, because the other cars in front of me had slowed down . . . He came out as though he was going to stop and then pulled on out. I did not turn to my right. Cars were parked along the street to my right. There was not enough room for me to swing out against the curb, cars were parked there. I had to stay in a direct line. I stayed directly in the lane of traffic. His car did not get all the way into the full line of traffic. If it had I would have hit the back bumper. At the time of the collision I was not going over 20 or 25 miles per hour. I had good brakes. My car skidded about half the length of the car or about 8 feet. I was right on him before I could stop . . . There was traffic ahead of me going in the same direction. Mr. Pittman

waited for the car ahead of me to pass. I blew my horn and he pulled out across this way at an angle in front of me and in my lane of traffic. The first impact was on the panel door just beyond the post of the door. The first impact on my car was on the left front fender . . . I . . . talked to Mr. Pittman and he said 'I didn't see your car.' He told me it was all his fault . . . The street was wet. My car stopped at the point of impact where the collision occurred."

And the Chief of Police testified in brief that on 11 August, 1950, along Market Street between First and Second Streets where the Perkins Warehouse is located about 75 per cent of the buildings are business buildings; that no speed limit markers have been posted in that section.

Motion of defendant Sipe entered at close of plaintiff's evidence for judgment as of nonsuit was allowed. Plaintiff excepted, and to judgment signed in accordance with the ruling of the court, plaintiff appeals to Supreme Court and assigns error.

*Wellons, Martin & Wellons for plaintiff, appellant.*
*Shepard & Wood for defendant Sipe, appellee.*

WINBORNE, J.   When the evidence offered by plaintiff upon the trial in Superior Court, as revealed by the record of case on appeal, is taken in the light most favorable to her, we are of opinion that the case comes within the principles enunciated in *Smith v. Sink,* 211 N.C. 725, 192 S.E. 108; *Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88; *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808; *Reeves v. Staley,* 220 N.C. 573, 18 S.E. 2d 239, and *Matheny v. Motor Lines,* 233 N.C. 673, 65 S.E. 2d 361, and is insufficient to require that an issue of negligence as to defendant Sipe be submitted to the jury. All the evidence offered by plaintiff manifests that defendant Pittman was negligent. Indeed, the uncontradicted evidence is that he admitted that "it was all his fault." If defendant Sipe were negligent, it is clear that it was insulated by the negligence of Pittman, and that his, Pittman's, negligence was the sole proximate cause of the collision. This conclusion finds support in *Harton v. Tel. Co.,* 146 N.C. 429, 59 S.E. 1022, and other cases cited in *Reeves v. Staley, supra,* at page 582.

In an action for recovery for injury to person or damage to property, resulting from alleged actionable negligence, the plaintiff must show: First, that there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which the defendant owed plaintiff under the circumstances in which they were placed; and, second, that such negligent breach of duty was the proximate cause of the injury or damage,—a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from

which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed. See *Ramsbottom v. R. R.,* 138 N.C. 38, 50 S.E. 448; *Whitt v. Rand,* 187 N.C. 805, 123 S.E. 84, and numerous later cases.

And the principle prevails in this State that what is negligence is a question of law, and when the facts are admitted or established, the court must say whether it does or does not exist. "This rule extends and applies not only to the question of negligent breach of duty, but to the feature of proximate cause," *Hoke, J.,* in *Hicks v. Mfg. Co.,* 138 N.C. 319, 50 S.E. 703; *Reeves v. Staley, supra,* and cases there cited.

In the case of *Lineberry v. R. R.,* 187 N.C. 786, 123 S.E. 1, in opinion by *Clarkson, J.,* this Court said: "It is well settled that where the facts are all admitted, and only one inference may be drawn from them, the court will declare whether an act was the proximate cause of the injury or not." Again, in *Russell v. R. R.,* 118 N.C. 1098, 24 S.E. 512, it is stated that "Where the facts are undisputed and but a single inference can be drawn from them, it is the exclusive duty of the court to determine whether an injury has been caused by the negligence of one or the concurrent negligence of both of the parties."

Furthermore, it is proper in negligence cases to sustain a demurrer to the evidence and enter judgment as of nonsuit: "1. When all the evidence taken in the light most favorable to the plaintiff fails to show any actionable negligence on the part of the defendant . . . 2. When it clearly appears from the evidence that the injury complained of was independently and proximately produced by the wrongful act, neglect, or default of an outside agency or responsible third person . . ." *Smith v. Sink, supra,* and cases cited. See also *Reeves v. Staley, supra,* and cases cited. Also *Mintz v. Murphy,* 235 N.C. 304, 69 S.E. 2d 849, and *Clark v. Lambreth,* 235 N.C. 578, 70 S.E. 2d 828.

"Foreseeability is the test of whether the intervening act is such a new, independent and efficient cause as to insulate the original negligent act. That is to say, if the original wrongdoer could reasonably foresee the intervening act and resultant injury, then the sequence of events is not broken by a new and independent cause, and in such event the original wrongdoer remains liable," as expressed by *Brogden, J.,* in *Hinnant v. R. R.,* 202 N.C. 489, 163 S.E. 555. See *Reeves v. Staley, supra,* and cases cited.

Too, it is a rule of law even in the absence of statutory requirements, that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. And in the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with

persons and vehicles upon the highways.    5 Am. Jur., Automobiles, Sections 165, 166, 167.

Also it is provided by statute, G.S. 20-156 (a), that "the driver of a vehicle entering a public highway from a private road or drive shall yield the right of way to all vehicles approaching on such public highway." And in order to comply with this statute, the driver of such vehicle is required to look for vehicles approaching on such public highway, and this "is required to be done at a time when his precaution may be effective," as expressed by *Stacy, C. J.,* in *Harrison v. R. R.,* 194 N.C. 656, 140 S.E. 598, citing cases.

Likewise, in *Matheny v. Motor Lines, supra,* involving a motor vehicle collision at an intersection, in opinion by *Devin, C. J.,* it is said: "Generally when the driver of an automobile is required to stop at an intersection he must yield the right of way to an automobile approaching on the intersecting highway . . . and unless the approaching automobile is far enough away to afford reasonable ground for the belief that he can cross in safety he must delay his progress until the other vehicle has passed."

Moreover, the operator of an automobile traveling upon a public highway in this State is under no duty to anticipate that the driver of an automobile entering the public highway from a private road or drive will fail to yield the right of way to all vehicles on such public highway, as required by the statute, G.S. 20-156 (a), and, in the absence of anything which gives or should give notice to the contrary, he is entitled to assume and to act upon the assumption, even to the last moment, that the driver of the automobile so entering the public highway from a private road or drive will, in obedience to the statute, yield the right of way.    See *Reeves v. Staley, supra.*

Applying these principles to the evidence in the case in hand, it is clear that defendant Pittman, driver of the automobile in which plaintiff was riding, in entering Market Street, a public highway, from a private road or drive, failed to "yield the right of way" to the automobile of defendant Sipe, as it was his duty to do, G.S. 20-156 (a), when he saw, or by the exercise of due care, would have seen it approaching on Market Street. All the evidence shows that the view from the entrance to the private road or drive to the river bridge, the direction from which the automobile of defendant Sipe was approaching, was unobstructed for a distance of 200 to 300 feet.    Yet defendant Pittman stated to defendant Sipe at the time, and testified on the witness stand that he did not see the Sipe automobile until the moment of impact.    Plaintiff saw it when it was 100 feet away.    The evidence of the conduct of defendant Pittman makes him guilty of negligence as a matter of law.    Such negligence, if the sole proximate cause of the injury and damage of which plaintiff complains,

will bar recovery by plaintiff from Sipe, even though she be only a guest in the Pittman automobile. See *Powers v. Sternberg, supra; Miller v. R. R.,* 220 N.C. 562, 18 S.E. 2d 232; *Reeves v. Staley, supra.* The defendant Sipe was under no duty to anticipate that defendant Pittman, in entering the public highway from a private road or drive would fail to yield the right of way to his automobile approaching on the public highway; and in the absence of anything which gave or should give notice to the contrary, he was entitled to assume and to act on the assumption, even to the last moment, that defendant Pittman would not only exercise ordinary care for his own safety as well as that of plaintiff riding in his car, but would act in obedience to the statute, and stop before entering the line and lane of motor vehicles then traveling on the street. As in *Reeves v. Staley, supra,* the evidence points to the emergency caused by the failure of defendant Pittman to yield the right of way and stop. Such a situation was not reasonably foreseeable by defendant Sipe. All the evidence further shows that Sipe was operating his automobile on his right-hand side of the street before and at the time of the collision.

Plaintiff contends, however, that there is evidence tending to show that the speed of the Sipe automobile was fifty miles per hour, reduced to 30 or 35 miles per hour, and, therefore, under the circumstances, unlawful. Even so, it is clear from the evidence that its speed would have resulted in no injury or damage to plaintiff but for the negligent act of defendant Pittman. See *Cox v. Freight Lines,* 236 N.C. 72. Hence, the proximate cause of the collision must be attributed to the palpable negligence of Pittman, as in *Butner v. Spease, supra,* and *Reeves v. Staley, supra.*

The cases relied upon by plaintiff are distinguishable.

The judgment below is

Affirmed.