MATTIE H. BARNEY, ADMINISTRATRIX OF THE ESTATE OF BETTY C. HANDY, DECEASED v. NORTH CAROLINA STATE HIGHWAY COMMISSION

No. 58

(Filed 15 November 1972)

1. **State § 10— tort claim proceeding — findings of fact — conclusiveness on appeal**

    A finding of fact by the Industrial Commission in a tort claim proceeding, other than a jurisdictional finding, is conclusive on appeal if there is any evidence in the record to support it; however, the Commission's designation of a declaration by it as a finding of fact is not conclusive.

2. **State § 10—tort claim proceeding — contributory negligence — appellate review**

    Negligence and contributory negligence are mixed questions of law and fact and, upon appeal, the reviewing court must determine whether facts found by the Industrial Commission support its conclusion of contributory negligence.

3. **State § 8— tort claim proceeding — burden of proving contributory negligence**

    The Industrial Commission erred as a matter of law in its "comment" that in order for a claimant to prevail in a proceeding under the Tort Claims Act, the claimant must show that he was not guilty of contributory negligence, since under G.S. 143-299.1 the defendant State agency has the burden of proving contributory negligence.

4. **Automobiles § 21— sudden emergency**

    A driver of an automobile, faced with a sudden emergency, is not held to the best possible choice of a means to avoid a collision but is held only to the care reasonably to be expected of one suddenly confronted with such a situation.

5. **Automobiles § 19— assumption that another driver will yield right-of-way**

    In the absence of anything which gives or should give an automobile driver notice to the contrary, he is entitled, even to the last moment, to assume and to act upon the assumption that the driver of another vehicle upon or about to enter a public highway will yield the right of way when required by law to do so.

Barney v. Highway Comm.

6. State § 8— tort claim proceeding — collision with motor grader — no contributory negligence

In an action under the Tort Claims Act to recover for the death of plaintiff's intestate in a collision between the intestate's automobile and a Highway Commission motor grader, there was no evidence to support a finding of fact which, in turn, would support the conclusion that plaintiff's intestate was contributorily negligent by failing to keep a proper lookout, failing to keep her car under control or driving at an excessive speed, where all the evidence showed that the motor grader was backing slowly in the intestate's direction in the lane of traffic to her left or upon the shoulder on that side of the road, that it moved backward in an arc across the center line into the intestate's lane of travel where the accident occurred, and that the motor grader had not previously been in the intestate's lane, where the record shows nothing which should have indicated to the intestate that the driver of the motor grader was unaware of the approach of her vehicle or that he intended to cross over into her lane of travel until he suddenly did so, where the only evidence of the speed of the intestate's vehicle was that it left light skidmarks on the pavement beginning 33 feet before it was struck, and where the nature of the damage to the intestate's vehicle permits of no conclusion other than that the motor grader backed into and struck the intestate's vehicle as the intestate was attempting to avoid a collision by applying her brakes and driving onto the shoulder.

CERTIORARI to the Court of Appeals to review its decision, reported in 14 N.C. App. 740, 189 S.E. 2d 641, affirming the order of the North Carolina Industrial Commission denying the plaintiff's claim for damages for wrongful death.

The plaintiff, in due time and form, filed her claim with the Industrial Commission alleging that her intestate died as the result of injuries received on 24 February 1970, when her automobile was struck by a motor grader operated negligently by Joseph Marion Hall, an employee of the North Carolina State Highway Commission. The Highway Commission filed answer denying negligence by its employee and pleading contributory negligence of the plaintiff's intestate.

It was stipulated that the plaintiff's intestate, Mrs. Handy, died as the result of injuries sustained in the accident, that the motor grader was owned by the Highway Commission and was, at the time of the collision, operated by its employee, Joseph Marion Hall, in the course and scope of his employment.

Other material facts found by the Hearing Commissioner include the following (numbering by the Commissioner) :

3. The speed limit on Highway 704 was 55 miles per hour. The road was dry.

5. The motor grader, weighing 25,000 pounds, eight feet wide, 28 feet long and painted bright yellow, was equipped with four amber blinking lights.

7. The operator of the motor grader was engaged in scraping and leveling the roadway and shoulders on State Road 1600 and in the intersection of that road with Highway 704. [This is a T intersection, with Highway 704 forming the top and Road No. 1600 forming the stem of the T. Highway 704 is a paved road, Road No. 1600 a dirt road.] In this operation a ridge of dirt had been pushed onto Highway 704. The operator was "in the motion of pushing this ridge of dirt off NC 704 onto State Road 1600 and leveling it, and was in the act of backing into NC 704. The rear of the motor grader crossed the center line of Highway 704 in an arcing or semi-circle position from west to east direction and the motor grader was then in a north-south position for entering State Road 1600. It took about 20 seconds to complete this movement. The motor grader operator felt a slight impact and then saw deceased's car in the ditch west of the motor grader, and went to the car and saw deceased, who was unconscious and made no statement."

8. "Before making the last back-up movement with the motor grader, the operator looked up and down Highway 704 and could see approximately one thousand feet in an easterly direction along straight road and approximately six hundred feet further into a slight curve, and seeing no one coming moved at a slow rate of speed. The motor grader's maximum speed in second gear is 20 miles per hour and from a starting position moves very slowly." [The plaintiff excepted to this finding.]

9. "Deceased, Betty C. Handy, was * * * traveling in a westerly direction * * *. The left front fender and wheel of deceased's car and the tire on the right rear wheel of the motor grader collided." [Plaintiff excepted to this finding.]

10. "The motor grader was completely in the left lane [Mrs. Handy's left] or on the south side of Highway 704 immediately before the impact and the right rear wheel was approximately seven feet over the center line to the north when it came to a complete stop after the impact, but had rolled back two or three feet of said seven feet from the point of im-

pact and the debris. The traffic lane was approximately ten feet wide."

11. "The motor grader operator did not hear a horn blow, brakes squeal nor any noise. He only felt a slight impact which was caused by deceased's automobile striking said * * * grader."

12. "There were two tire marks on the highway beginning 33 feet prior to the point of impact, and at the point of impact there was one tire mark. At the point of the DEBRIS the left front wheel, impact wheel, was four feet onto the road surface and the right front wheel was off the road surface. There was one tire mark 24 feet beyond the point of impact and debris that slanted towards the north edge of the road. Deceased's car stopped 24 feet beyond the motor grader in the ditch next to an embankment in an upright position on all four wheels. The car had hit the embankment more than once."

13. "The left side of deceased's car was caved in beginning with the left headlight and continuing past the left front door. The motor grader was not damaged."

17. "The motor grader operator was negligent in that he backed the vehicle he was operating into the intersection without seeing that such a move could be made in safety. His negligence in this fashion was one of the proximate causes of the accident giving rise hereto."

18. "The deceased was contributorily negligent in that she was not keeping a proper lookout, did not have her car under proper control and was driving at an excessive speed under conditions then existing. The contributory negligence of plaintiff's intestate was one of the proximate causes of the accident." [Plaintiff excepted to this finding.]

The Hearing Commissioner, in stating the rules of law deemed by him to control the decision in the matter, said:

> "In order for a claimant to prevail in a proceeding under the State Tort Claims Act, he must show not only injury resulting from negligence of a designated State employee, but also that claimant was not guilty of contributory negligence. *Floyd v. State Highway Commission*, 241 N.C. 461; G.S. 143-299 (1)."

The Hearing Commissioner concluded as matters of law that the operator of the motor grader was negligent, that Mrs.

Handy was guilty of contributory negligence, and, therefore, the plaintiff's claim should be denied.

On appeal to it, the Full Commission was of the opinion that all of the Hearing Commissioner's above mentioned findings of fact are supported by the evidence and that his conclusions of law were without prejudicial error. It, therefore, affirmed the decision of the Hearing Commissioner.

Upon further appeal to it, the Court of Appeals affirmed, saying: "While we agree that a jury could have found otherwise, we are of the opinion that there is competent evidence to support the finding of contributory negligence and that it was a proximate cause of the accident."

The material evidence is to the following effect:

Mrs. Handy, who was driving westwardly on Highway 704, never regained consciousness after the collision. Her car came to rest in the ditch on her right side of the highway, resting against the bank. The investigating highway patrolman found the motor grader diagonally across Highway 704, its back end being eight to ten feet across the center of the road; that is, on the north side of the pavement, Mrs. Handy's right side. There was no damage to the motor grader, but the Handy car was severely crushed in from the left headlight to the rear of the left door. There was no damage to its front end. The pavement on Highway 704 is 19 feet wide and the shoulder four feet wide.

The operator of the motor grader did not see the Handy automobile until after the impact. Immediately after the accident he told the investigating highway patrolman that he had been in Road No. 1600, the stem of the T, and was backing into Highway 704. However, the operator's own testimony was that he had been working in the intersection about five minutes prior to the accident, partly in the left (eastbound) lane of Highway 704 and partly in the intersection, the grader being headed west. Immediately prior to the accident, he made a reverse, arcing movement from west to east "in preparations to pull into [Road] 1600." He backed the grader "directly East part of the way and back and swing [sic] in a semi-circle to the northeast * * * a semi-circle across 704." In his opinion, it took him about 20 seconds to make this "sweeping, arcing movement." He heard no horn or squealing of tires. When he felt the slight impact, the grader was stopped.

The blinking lights on the motor grader were general warning beacons, not turn signals. The operator gave no signal to indicate his intent to turn his vehicle across the pavement of Highway 704. He was traveling at a slow rate of speed in making the arcing movement and at the time of impact was preparing to shift gears to go forward into Road No. 1600, the stem of the T. The arcing movement was his "first trip all the way across NC 704." Immediately prior thereto, he was completely in the left lane of Highway 704 traveling in a westwardly direction (the same direction in which Mrs. Handy was driving). The arcing movement immediately prior to the collision included some backing in an easterly direction along Highway 704.

No other person saw the collision. A witness, who heard it and reached the scene immediately thereafter, testified that the grader rolled backwards two and a half feet after the impact; that is, the point where it stopped was two and a half feet nearer the bank than was the point of impact.

Light tire skid marks on the pavement of Highway 704 in the westbound lane, Mrs. Handy's right-hand lane, began 33 feet from the grader and approximately three feet from the right-hand edge of the pavement. They angled toward the ditch. After passing the point of impact there was only one skid mark on the pavement. It continued 24 feet beyond the point of impact and was darker than those east of the point of impact. At and after the point of impact the mark of the right wheel of the automobile was off the pavement.

There was a regular Highway Department stop sign at the intersection facing traffic coming into it on Road No. 1600. There were no signs warning of highway work in progress.

*White, Crumpler & Pfefferkorn, by James G. White, Fred. G. Crumpler, Jr., Michael J. Lewis, and G. Edgar Parker for plaintiff appellant.*

*Attorney General Morgan, by Deputy Attorney General Bullock and Associate Attorney Christine A. Witcover for defendant appellee.*

LAKE, Justice.

[1, 2] Upon an appeal from the Industrial Commission in a proceeding under the Tort Claims Act, a finding of fact by the

Commission, other than a jurisdictional finding, is conclusive if there is any competent evidence in the record to support it. *Bailey v. Dept. of Mental Health,* 272 N.C. 680, 159 S.E. 2d 28; *Mica Co. v. Board of Education,* 246 N.C. 714, 100 S.E. 2d 72. The Commission's designation of a declaration by it as a finding of fact is not conclusive, however. *Brown v. Board of Education,* 269 N.C. 667, 153 S.E. 2d 335. Negligence and contributory negligence are mixed questions of law and fact and, upon appeal, the reviewing court must determine whether facts found by the Commission support its conclusion of contributory negligence. *Brown v. Board of Education, supra.* See also, *Garner v. Pittman,* 237 N.C. 328, 75 S.E. 2d 111.

Under the Tort Claims Act negligence, contributory negligence and proximate cause, as well as the applicability of the doctrine of respondeat superior, are to be determined under the same rules as those applicable to litigation between private individuals. *MacFarlane v. Wildlife Resources Commission,* 244 N.C. 385, 93 S.E. 2d 557. See also: *Crawford v. Board of Education,* 275 N.C. 354, 168 S.E. 2d 33; *Trust Co. v. Board of Education,* 251 N.C. 603, 111 S.E. 2d 844. G.S. 143-291 provides, "The Industrial Commission shall determine whether or not each individual claim arose as a result of a negligent act of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina."

[3] The Commission erred, as a matter of law, in its "comment" that in order for a claimant to prevail in a proceeding under the Tort Claims Act, the claimant must show that he was not guilty of contributory negligence. The case of *Floyd v. Highway Commission,* 241 N.C. 461, 85 S.E. 2d 703, cited by the Commission as authority for this proposition, did so hold. *MacFarlane v. Wildlife Resources Commission, supra,* held likewise. However, after the decision of this Court in *Floyd v. Highway Commission, supra,* and after the accident giving rise to the claim in *MacFarlane v. Wildlife Resources Commission, supra,* the Legislature amended the Tort Claims Act by adding thereto G.S. 143-299.1, which expressly provides that contributory negligence "shall be deemed to be a matter of defense * * * and such State department, institution or agency shall have the burden of proving that the claimant or the person in whose

behalf the claim is asserted was guilty of contributory negligence." Consequently, *Floyd v. Highway Commission, supra,* and *MacFarlane v. Wildlife Resources Commission, supra,* may no longer be considered authoritative on this question.

The Commission's error of law as to the burden of proof on the issue of contributory negligence led it into an erroneous conclusion that the claimant's intestate was guilty of contributory negligence. While inferences may be drawn by the Commission from facts leading reasonably thereto, a conclusion of negligence or contributory negligence may not be drawn in favor of the party having the burden of proof upon no basis other than speculation and unproved possibilities. The facts found by the Commission do not support its conclusion that Mrs. Handy was guilty of contributory negligence and the evidence in the record would not support a finding of fact reasonably permitting such an inference.

No witness saw Mrs. Handy's automobile prior to the collision. The only evidence of its speed lies in the skid marks on the road. There is no evidence that she failed to keep a lookout or that she did not have her automobile under control prior to the sudden movement of the motor grader into her lane of travel.

[4, 5] It is well established that a driver of an automobile, faced with a sudden emergency, is not held to the best possible choice of a means to avoid a collision but is held only to the care reasonably to be expected of one suddenly confronted with such a situation. *Forgy v. Schwartz,* 262 N.C. 185, 136 S.E. 2d 668; *Simmons v. Rogers,* 247 N.C. 340, 100 S.E. 2d 849. As observed by Chief Justice Devin in *Morgan v. Saunders,* 236 N.C. 162, 72 S.E. 2d 411, "It has several times been stated by this Court that the driver of an automobile who is himself observing the law [citation omitted] in meeting and passing an automobile proceeding in the opposite direction has the right ordinarily to assume that the driver of the approaching automobile will also observe the rule and avoid a collision." A motorist is not bound to anticipate negligent acts on the part of other drivers. *Williams v. Tucker,* 259 N.C. 214, 130 S.E. 2d 306. In the absence of anything which gives or should give him notice to the contrary he is entitled, even to the last moment, to assume and to act upon the assumption that the driver of another vehicle upon, or about to enter, a public highway will comply

with the law in the operation of his vehicle and will yield the right of way when required by the law to do so. *Carr v. Lee,* 249 N.C. 712, 107 S.E. 2d 544; *Simmons v. Rogers, supra; Garner v. Pittman, supra.*

[6] All of the evidence is to the effect that the motor grader had not previously been in Mrs. Handy's proper lane of travel and that, while clearly visible, it was moving very slowly in her direction in the lane of traffic to her left, or upon the shoulder on that side of the road. The record shows nothing which should have indicated to Mrs. Handy that the driver of the motor grader was unaware of the approach of her vehicle, or that he intended to cross over the center line into her lane of travel until he suddenly did so. According to the findings by the Commission, the motor grader moved backward in an arc from four to seven feet across the center line into Mrs. Handy's lane of traffic before the impact. Even at a speed of five miles per hour, such a movement across the center line would have taken, at the most, one second. The nature of the damage to the Handy vehicle permits of no conclusion other than that the motor grader backed into and struck the Handy vehicle as Mrs. Handy was attempting to avoid a collision by applying her brakes and driving onto the shoulder.

Light skid marks left on the pavement by the Handy vehicle, beginning 33 feet before it was struck, do not, standing alone, permit a finding of excessive speed. *Clayton v. Rimmer,* 262 N.C. 302, 136 S.E. 2d 562; *Williamson v. Randall,* 248 N.C. 20, 102 S.E. 2d 381. There is, therefore, no evidence in this record to support a finding of fact which, in turn, would support the conclusion that Mrs. Handy failed to keep a proper lookout, failed to keep her car under control, was driving at a speed in excess of that which was reasonable and prudent under prevailing conditions or was otherwise guilty of negligence which was one of the proximate causes of the collision. All of the evidence is to the effect that the force of the impact knocked her from the driver's seat and rendered her unconscious immediately. The further progress of her vehicle, even if not due entirely to the force of the blow delivered by the motor grader, cannot be attributed to any act or omission by Mrs. Handy.

The judgment of the Court of Appeals must, therefore, be reversed and this proceeding remanded to that court for the

entry by it of a judgment reversing the order of the Industrial Commission and further remanding the matter to the Commission for its determination of the amount of damages to be awarded the claimant pursuant to G.S. 143-291, and for the entry of an award in favor of the claimant in that amount, not to exceed $15,000.00, that being the maximum award permitted by the statute as it read at the time this accident occurred.

Reversed and remanded.