TINA MINKS, PETER J. MINKS, III BY HIS GUARDIAN AD LITEM, TINA MINKS, AND PETER
J. MINKS, II, PLAINTIFFS/APPELLANTS v. NORTH CAROLINA HIGHWAY PATROL,
DEFENDANT/APPELLEE

No. 9310IC1036

(Filed 1 November 1994)

**Sheriffs, Police, and Other Law Enforcement Officers § 21
(NCI4th)— highway patrol trooper's high speed chase—
failing to slow down negligence as matter of law**

In an action to recover for injuries sustained by plaintiff and
her child who were struck by a trooper engaged in a high speed
chase, the evidence was insufficient to support the deputy com-
missioner's finding that plaintiff failed to keep a proper lookout.
Therefore, the deputy commissioner's finding that "the collision
would have been avoided had Trooper Sanborn managed to steer
more to the left," when taken into account with the particular cir-
cumstances of the accident which indicated that the trooper had
not seen the vehicle he was chasing at ninety m.p.h., was unaware
of how far ahead of him it may have been, and had observed
plaintiff's vehicle some 500 feet away in the center turn lane posi-
tioning itself to make a left turn, mandated the conclusion that
the trooper was negligent as a matter of law by failing to slow
down when he saw plaintiff's vehicle positioning itself to pull out
into his lane of travel.

**Am Jur 2d, Sheriffs, Police, and Constables §§ 90
et seq.**

Appeal by plaintiffs from decision and order entered 2 June 1993
by the Industrial Commission. Heard in the Court of Appeals 24
August 1994.

*Voerman & Carroll, P.A., by Cynthia Carroll, for plaintiffs-
appellants.*

*Attorney General Michael F. Easley, by Special Deputy Attorney
General Elisha H. Bunting, for defendant-appellee.*

WYNN, Judge.

On 19 September 1988, Trooper Carl Sanborn worked for defend-
ant, North Carolina Highway Patrol, and was patrolling Highway 70, a
four-lane divided highway between New Bern and Havelock. Trooper

## MINKS v. N. C. HIGHWAY PATROL

[116 N.C. App. 710 (1994)]

Sanborn pulled a driver over for speeding in the westbound lane of Highway 70. As he was speaking with the driver an off-duty Havelock police officer, Wade Von Beltenburg, stopped and informed Trooper Sanborn that he had observed what he thought was a drunk driver heading west on the highway and gave Trooper Sanborn a description of the vehicle which included its make, color, and license plate.

Trooper Sanborn returned to his patrol car and pulled onto the highway to catch up with the vehicle Officer Von Beltenburg had described. The blue light on the patrol car's dashboard was on and Trooper Sanborn accelerated until he was going about ninety miles per hour, passing several vehicles. Trooper Sanborn then saw a 1976 Chrysler New Yorker, driven by plaintiff Tina Minks, pull into the cross-over roadway between the east and west-bound lanes approximately 500 feet ahead. Plaintiff did not see the patrol car nor notice that its blue light was flashing. Plaintiff testified that the oncoming traffic was at least 300 yards away when she began to cross the highway. The road was straight and the weather was clear.

Trooper Sanborn first thought plaintiff was going to stop so he steered his car to the right, but plaintiff continued across the highway. Trooper Sanborn slammed on his brakes and skidded towards the intersection. His patrol car struck plaintiff's car behind the back door and knocked it off the highway. Plaintiff's car was half way off of the highway at the time of the collision. Plaintiff, her infant son, and Trooper Sanborn were all injured as a result of the collision.

Plaintiff, her son, and her husband brought this action under the Tort Claims Act, N.C. Gen. Stat. § 143-291. After a hearing, the deputy commissioner found as fact that Trooper Sanborn had a duty to apprehend drunk drivers and remove them from the highway; that he had acted as a reasonably prudent person would have acted under the circumstances in discharging his official duties; that had plaintiff maintained a proper lookout, she would have seen Trooper Sanborn's patrol car; that plaintiff created an emergency situation by pulling onto the highway; and that the collision could have been avoided if Trooper Sanborn had managed to steer more to the left, but that he reacted as a reasonably prudent person. The deputy commissioner concluded that Trooper Sanborn was not negligent and denied plaintiffs' claims. Plaintiffs appealed to the Full Commission. After a hearing, the Commission adopted the deputy commissioner's decision and order. From this holding, plaintiffs appeal.

Plaintiffs argue that the Industrial Commission erred by concluding that the accident was not the result of any negligence on the part of Trooper Sanborn. We agree.

A finding of fact by the Industrial Commission in a proceeding under the Tort Claims Act is conclusive on appeal when supported by competent evidence. *Bailey v. North Carolina Dept. of Mental Health*, 272 N.C. 680, 159 S.E.2d 28 (1968); *Price v. North Carolina Dept. of Correction*, 103 N.C. App. 609, 406 S.E.2d 906 (1991). Negligence and contributory negligence are mixed questions of law and fact, and the reviewing court must determine whether the Commission's findings support its conclusions. *Barney v. North Carolina State Highway Commission*, 282 N.C. 278, 284, 192 S.E.2d 273, 277 (1972); *Bolkhair v. North Carolina State University*, 321 N.C. 706, 365 S.E.2d 898 (1988).

In order to recover under the Tort Claims Act, plaintiffs must show that their injuries were the proximate result of a negligent act by a state employee acting within the course and scope of his employment. N.C. Gen. Stat. § 143-291 (1993); *Alliance Co. v. State Hosp. at Butner*, 241 N.C. 329, 85 S.E.2d 386 (1955). It is undisputed that Trooper Sanborn was a state employee acting within the scope of his employment at the time of the collision. Under the Act, negligence is determined by the same principles applicable to private parties. *Bolkhair*, 321 N.C. at 709, 365 S.E.2d at 900.

When the plaintiff's injuries are caused by a collision with an officer's vehicle involved in a chase, "[t]he officer is held to the standard of care that a reasonably prudent person would exercise in the discharge of his duties of a like nature and under like circumstances." *Bullins v. Schmidt*, 322 N.C. 580, 582, 369 S.E.2d 601, 603 (1988). If the officer complies with the standard, then he is exempt from the statutory speed laws. *Id*; *see* N.C. Gen. Stat. § 20-145 (1993). The officer does not enjoy any special immunity in the negligent operation of his vehicle, but the standard of care takes into account his official duties and the particular circumstances under which he must act. *Goddard v. Williams*, 251 N.C. 128, 133-4, 110 S.E.2d 820, 824 (1959) (quoting *McKay v. Hargis*, 351 Mich. 409, 417, 88 N.W.2d 456, 460 (1958)); *Collins v. Christenberry*, 6 N.C. App. 504, 170 S.E.2d 515 (1969); *see* Charles E. Daye and Mark W. Morris, *North Carolina Law of Torts*, § 19.42.47 at 336 (1991).

In the instant case, the deputy commissioner made the following findings:

5. Mrs. Minks pulled her car onto the highway. It appeared to Trooper Sanborn that the car paused as though it might stop, so he steered his car to the right, but the car then continued across the highway. He slammed on brakes and began skidding towards the intersection and to the right. Although the Minks vehicle was about half way off of the highway at the time of the collision, the patrol car struck it behind the back door and knocked it off of the highway. Mrs. Minks, her baby and Trooper Sanborn were all injured as a result of the accident.

6. As a highway patrolman, Trooper Sanborn had a duty to apprehend drunk drivers and remove them from the highways. He had reasonable grounds on this occasion to believe that there was a drunk driver further west on Highway 70, and he was in pursuit of that driver when the accident in question occurred. It was necessary for him to exceed the speed limit in order to catch up with the car under suspicion. Trooper Sanborn also had a duty to other motorists to exercise due care for their safety as he was pursuing this car. He acted as a reasonably prudent person discharging official duties would have acted under the circumstances.

7. However, had Mrs. Minks been keeping a proper lookout before she pulled onto the highway, she should have observed that the patrol car was approaching at a rapid speed and that she could not safely cross the highway at that time. She created an emergency situation when she pulled out, and, although the collision would have been avoided had Trooper Sanborn managed to steer more to the left, he reacted as a reasonably prudent person when confronted with such an emergency. The accident occurred within a few seconds.

The deputy commissioner then concluded that plaintiffs were not injured as a result of any negligence on the part of Trooper Sanborn. The Full Commission reviewed this decision and noted that there was a dispute regarding whether Trooper Sanborn's blue light was on at the time of the accident. In adopting the deputy commissioner's decision, the Full Commission held that Trooper Sanborn's testimony was more credible.

The application of particular facts to the reasonableness standard is nearly always a question of fact, not of law. *Bolkhir*, 321 N.C. at 712, 365 S.E.2d at 902; *Hulcher Brothers & Co. v. North Carolina Dept. of Transp.*, 76 N.C. App. 342, 332 S.E.2d 744 (1985). "Only when the facts are such that reasonable minds can reach but one conclusion does

the question become one of law." *Hulcher*, 76 N.C. App. at 343, 332 S.E.2d at 745.

While Trooper Sanborn's conduct of engaging in high speed pursuit of a vehicle that he has not seen and is unaware how far ahead it may be is questionable, we find that there was competent evidence to support the deputy commissioner's finding that Trooper Sanborn acted reasonably in beginning the high speed chase.

There is no evidence in the record, however, to support the deputy commissioner's finding that "had Mrs. Minks been keeping a proper lookout before she pulled onto the highway, she should have observed that the patrol car was approaching at a rapid rate of speed and that she could not cross the highway at that time." The only testimony on this point was by Mrs. Minks who testified on cross-examination:

Q. Did you come to a stop at that median cross-over area before you proceeded?

A. Yes, I did.

Q. You said that at the time that you saw the vehicles they were around three hundred yards down the road? That's when you began to —

A. No, I waited for the white truck to pass and then I looked, and the traffic behind it was a long ways down—at least three hundred yards away. And I proceeded to cross it.

Trooper Sanborn testified that he was five hundred feet away from Mrs. Minks when he saw her pull out to cross the highway. Mrs. Minks testified that she looked before crossing the highway and her testimony is uncontradicted. There is no evidence to support a finding that Mrs. Minks failed to keep a proper lookout before she pulled onto the highway. *See Myrick v. Peeden*, 113 N.C. App. 638, 439 S.E.2d 816, *disc. review denied*, 336 N.C. 781, 447 S.E.2d 476 (1994); *Snead v. Holloman*, 101 N.C. App 462, 400 S.E.2d 91 (1991).

Thus we are left with the deputy commissioner's finding that "the collision would have been avoided had Trooper Sanborn managed to steer more to the left." We conclude that this finding when taken into account with the particular circumstances of the accident which indicate that Trooper Sanborn had not seen the vehicle he was chasing at ninety miles per hour; was unaware how far ahead of him it may have been; and had observed plaintiff's vehicle some 500 feet away in the

center turn lane positioning itself to make a left turn, mandates the conclusion that Trooper Sanborn was negligent as a matter of law by failing to slow down when he saw Mrs. Minks's vehicle positioning itself to pull out into his lane of travel. The decision and order of the Industrial Commission is

Reversed.

Judges JOHNSON and ORR concur.