***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Chief Deputy Commissioner Gheen and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Chief Deputy Commissioner Gheen with modifications.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff's date of birth is May 10, 1954. She was forty-eight years old on January 28, 2003, the date of the collision. Plaintiff was employed as a knitting machine operator at Guilford Mills in Kenansville, North Carolina at the time of the collision. *Page 2 
2. Lillie Battiste (hereinafter "Battiste") was a school bus driver for defendant. She was forty-five years old on the date of the collision. She began working for defendant as a bus monitor on August 13, 2001, and she began training as a bus driver in November 2002. Battiste obtained her commercial driver's license (CDL) in December 2002 and began working as a school bus driver for defendant on January 9, 2003.
3. Battiste typically left her home for work between 6:10 and 6:15 a.m. She would drive to the bus depot at Charity Middle School to pick up the school bus and typically left the bus depot by 6:25 a.m. From the Charity Middle School parking lot, Battiste would turn left onto Charity Road and proceed east toward N.C. Highway 11. She would cross over N.C. Highway 11 and proceed to the Pre-K Center in Greenevers at which time the bus monitor would board the bus.
4. On January 28, 2003, Battiste was driving the school bus east on Charity Road. She came to a complete stop at the intersection of Charity Road and N.C. Highway 11. Battiste testified that she looked left, right and left again and started to pull out to cross the intersection.
5. On the morning of January 28, 2003, plaintiff was on her way to work. She left her home between 6:05 and 6:10 a.m., traveling north on N.C. Highway 11 in a 2000 black Dodge Durango. Plaintiff testified that her speed as she approached the intersection of Charity Road and N.C. Highway 11 was approximately forty-five to fifty miles per hour.
6. Defendant's school bus operated by Battiste and the Dodge Durango operated by plaintiff collided in the northbound lane of N.C. Highway 11 at approximately 6:34 a.m. The only passenger on the bus at the time of the collision was Battiste's four year-old son. Both Battiste and plaintiff testified that they did not see one another's vehicles prior to impact. *Page 3 
7. There was a stop sign and flashing red light regulating traffic traveling east on Charity Road. At the time of the collision, there was a yellow caution sign with a suggested speed of thirty-five miles per hour for traffic on northbound N.C. Highway 11 approaching the intersection of Charity Road and N.C. Highway 11. In addition, there was a yellow flashing light for northbound traffic on N.C. Highway 11. The posted speed limit at the location of the collision was forty-five miles per hour.
8. The greater weight of the evidence establishes that at the time of the collision on January 28, 2003, it was cold, dark and foggy. While testimony differed as to the degree of fog at the intersection, the compelling greater weight of the evidence is that the fog was sufficient to impair normal distances of visualization for both drivers to an appreciable degree. There were no eyewitnesses to the actual collision.
9. Trooper Anthony Silance of the North Carolina State Highway Patrol investigated the collision. From his investigation, Trooper Silance determined that the bus was stopped at the stop sign at RP-1102 (Charity Road) and N.C. Highway 11 and proceeded east across N.C. Highway 11. The Durango was traveling north on N.C. Highway 11. The left front portion of the Durango collided with the right front portion of the school bus. There were no tire impressions before impact for either vehicle. The bus traveled seventy-one feet after impact. The Durango traveled forty-one feet after impact. Plaintiff admitted that her speed as she approached the intersection of Charity Road and N.C. Highway 11 was approximately forty-five to fifty miles per hour. Trooper Silance testified at deposition, that in his opinion, there was a significant amount of speed on the Durango's part to push or knock the bus seventy-one feet after impact. Trooper Silance has worked with the North Carolina State Highway Patrol for *Page 4 
eight years and had investigated between six hundred and eight hundred motor vehicle accidents at the time of hearing before the deputy commissioner.
10. During his investigation, Trooper Silance was informed that plaintiff did not have her headlights on at the time of the collision. As a result, Trooper Silance inspected the headlight switch in the Durango and discovered that the switch was in the parking light position. Trooper Silance could not recall the original source of the information that plaintiff did not have her headlights on, but spoke with Glenwood Glaspie (hereinafter "Glaspie") regarding the issue.
11. Glaspie testified at deposition that plaintiff passed him on the morning of the collision. He advised Trooper Silance that he did not see any headlights, but he did observe plaintiff's taillights after she passed him. Glaspie was not a witness to the collision, but came upon the scene immediately after the collision.
12. James Green (hereinafter "Green"), a professional engineer specializing in forensic engineering work and tendered as an expert in accident reconstruction, opined that the available time for the Durango to see the school bus traversing the intersection was 5.08 seconds, or three hundred thirty-four feet, to the area of impact. The time for the front edge of the school bus to traverse the total intersection was approximately six hundred sixty feet from the intersection. Green further opined that if plaintiff had on her low beams, the bus was visible for at least six hundred feet. The retro reflectors on the side of the bus give a feedback to the human eye of at least two thousand feet in headlight beams at an angle of one hundred five degrees. The canary yellow paint gives a feedback to the human eye, under low beams, of at least two thousand feet. Based on the Engineering Analysis, a witness who observed the Durango just prior to impact, and Trooper Silance's testimony that the light switch in the Durango was in the *Page 5 
parking light position, Green concluded that plaintiff was operating the Durango without headlights prior to impact.
13. At the hearing before the deputy commissioner, Green testified that under the conditions in this case, if plaintiff had her lights off she could not see the school bus. Plaintiff testified that she did not see the bus prior to impact.
14. The greater weight of the evidence shows that plaintiff had her headlights on at the time of the accident. The road on which plaintiff traveled, while known to her, could not rationally be transversed under the foggy conditions without headlights at the speeds at which plaintiff admitted she was traveling.
15. The ability of both drivers to see each other was equally affected by the fog at the intersection. The probative weight of the evidence establishes that plaintiff did not see the school bus until immediately prior to impact and that Battiste did not see plaintiff until the time of impact.
16. As a result of the collision plaintiff suffered an open head injury with depressed skull fracture, left rib fractures (1-6), left scapula shoulder fracture, open facial fracture with avulsion and right cheek laceration, bilateral proximal tibia and fibula fractures, T-6 spinous process fracture, alvelor ridge fracture, respiratory failure, left proximal humerus fracture, acute blood loss anemia and left pulmonary contusion.
17. Plaintiff incurred medical expenses totaling $245, 171.93 and lost wages of $68,606.72. The evidence shows that plaintiff's medical conditions relating to the collision are permanent and will require continued and additional medical care.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following: *Page 6 
 CONCLUSIONS OF LAW
1. Plaintiff's claim is filed pursuant to the North Carolina State Tort Claims Act. The Industrial Commission has jurisdiction to hear and determine tort claims against any county board of education where the claim arose as a result of the negligent act or omission of the school bus driver who was employed at the time by the county administrative unit of which such board was the governing body. N.C. Gen. Stat. §143-300.1.
2. Under the Tort Claims Act negligence, contributory negligence and proximate cause are determined under the same rules as those applicable to private individuals. Barney v. North Carolina State Highway Commission,282 N.C. 278, 284, 192 S.E.2d 273, 277 (1972).
3. To establish a claim for negligence, plaintiff must show that: (a) Battiste failed to exercise due care in the performance of some legal duty owed to plaintiff; and (b) the breach of that duty was the proximate cause of plaintiff's injury. Bolkhir v. N.C. State University,321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988).
4. Under the facts of this case, Battiste had a general duty to exercise care and determine that she could enter the intersection with reasonable assurance of safety to herself and others. Primm v. King,249 N.C. 228, 235, 106 S.E.2d 223, 229 (1958). On January 28, 2003, Battiste exercised due care in keeping a proper lookout by coming to a complete stop at the intersection and looking to the left, to the right, and back to the left before entering the intersection. Therefore, Battiste did not breach her duty of care to plaintiff.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is hereby, DENIED.
2. Each side shall pay its own cost.
This the 14th day of November 2007.
S/______________________ BUCK LATTIMORE COMMISSIONER
CONCURRING:
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER
 S/______________________ PAMELA T. YOUNG CHAIR *Page 1